CONTINENTAL MORTGAGE
INVESTORS, Plaintiff,

v.

FIRST NATIONAL CITY BANK,
Defendant.

No. 76 CIV 712 (LBS).

United States District Court,
S. D. New York.

March 8, 1979.

Burns, Jackson, Miller, Summit & Jacoby, New York City, for plaintiff; Stuart A. Summit, Gary L. Maddock, New York City, of counsel.

Shearman & Sterling, New York City, for defendant; Andrew S. O'Connor, New York City, of counsel.

### OPINION

SAND, District Judge.

The issue to be resolved in this non-jury proceeding is whether the sum of $1,261,-937.50 held by defendant First National City Bank ("Citibank") should be distributed to holders of subordinated debentures issued by Continental Mortgage Investors ("CMI") or whether said funds should be returned to CMI. In resolving this issue, we must determine whether a certain transfer of funds from CMI to Citibank was made pursuant to a Trust Indenture or pursuant to a letter agreement between the parties. If the transfer was made pursuant to the Indenture, the Court must consider the consequences of a failure on the part of CMI to comply with its two-day notice provision. If the transfer was pursuant to the letter agreement, the Indenture notice provision is irrelevant and the funds should be returned to CMI. We conclude that the transfer was made pursuant to the letter agreement and that consequently the funds should be returned to CMI.

CMI is a Massachusetts business trust created under a Declaration of Trust dated November 29, 1961, as amended, under the laws of the Commonwealth of Massachusetts and has its principal place of business in Boston, Massachusetts. Citibank is suc-

cessor by appointment to Chemical Bank as Trustee and paying agent under an Indenture between CMI and Chemical Bank dated as of February 15, 1970 pursuant to which there are outstanding $40,328,000 in principal amount of Convertible Subordinated Debentures due February 15, 1990. Subject to the provisions of the Indenture, the terms of each Debenture provide that interest on the principal sum outstanding is payable at the rate of 6¼% semi-annually on August 15 and February 15 of each year. The Debentures (principal and interest) are subordinated to the Senior Indebtedness of CMI which consists primarily of a Domestic Credit Agreement and a Eurodollar Credit Agreement, involving approximately 96 banks. The interests of the Senior Indebtedness are being represented in this litigation by Bankers Trust Company ("Bankers").

Section 3.03 of the Indenture provides that in the event CMI is in default under the Senior Indebtedness "no payment of principal of, premium, if any, or interest on the Debentures . . . shall be made by CMI . . .". Section 3.04 of the Indenture provides:

"Nothing contained in this Indenture or in any of the Debentures shall (a) affect the obligation of CMI to make, or prevent CMI from making, at any time except as provided in Sections 3.02 and 3.03, payments of principal of, premium, if any, or interest on the Debentures, or (b) prevent the application by the Trustee of any moneys deposited with it hereunder to the payment of or on account of the principal of, premium, if any, or interest on the Debentures, if, prior to the second business day preceding the date upon which such moneys become payable for any purpose, the Trustee at its principal office shall not have received written notice as provided in Section 3.06." [1]

On December 1, 1975, CMI did not pay the principal and interest due on the Senior Indebtedness. As a result, CMI was in default under the Senior Indebtedness on December 2, 1975. The next interest payment date was February 15, 1976. On December 3, 1975, a meeting was held of representatives of CMI, Citibank and Bankers at which time the default of CMI and the steps being considered to remedy the default were discussed. At that meeting a representative of Bankers stated that a proposed new credit agreement would be circulated to the participating banks and that it was anticipated that the new credit agreement could be executed by January 16, 1976. Citibank was to be kept informed of the progress being made in connection with the new credit agreement. CMI also requested at the meeting that an agreement be executed extending, until January 16, 1976, a waiver of a default under the credit agreements which waiver had expired on December 1, 1975.

Section 8.07 of the Indenture provides that within 90 days after the occurrence of any default under the Indenture, the Trustee shall notify the debentureholders of such default unless such default is cured prior to the giving of notice, except that "in the case of default in the payment of . . . interest . . . the Trustee shall be protected in withholding such notice if . . . the Trustee in good faith determine[s] that the withholding of such notice is in the interest of the debentureholders."

At the request of Citibank and pursuant to the terms of the Indenture, CMI delivered to it an Officers' Certificate, dated December 11, 1975 but received December 16, 1975, stating that CMI was in default with respect to the Senior Indebtedness. Citibank did not notify the bondholders [2] of

---

1. Section 3.06 of the Indenture provides in substance that any written notice which would prohibit the Trustee from making payment must be actually received by the Trustee and must, to the satisfaction of the Trustee, appear to have been given by a proper representative of CMI.

2. The terms "bondholders" and "debentureholders" are used interchangeably in this opinion.

the default.[3] The amendment to the Senior Indebtedness extending the waiver to January 16, 1976 was executed and became effective on or about January 9, 1976 on which date Citibank received another Officer's Certificate from CMI stating that it was no longer in default under the Senior Indebtedness. As late as January 13, 1976, Citibank knew that all participating banks had not executed the proposed new credit agreements and that if all banks did not consent by January 16th, CMI would again be in default on the Senior Indebtedness.

On or about January 6, 1976, Mr. William Hayes, Vice-President in the Corporate Trust Department of Citibank, suggested to Mr. T. Frank Armstrong, an officer of CMI in charge of communications among CMI, Citibank and Bankers, that CMI consider depositing with Citibank funds equal to the amount of interest due on February 15, 1976. In a letter dated January 13, 1976 to Mr. Eugene J. Jaworski, a senior trust officer in the Corporate Trust Department of Citibank and responsible for the administration of the CMI Indenture, Mr. Armstrong advised Citibank that he had arranged for the transfer of the funds. The letter stated: "hold these funds for our account and use them to pay the interest which will be due on February 15, 1976 on our 6¼% Convertible Subordinated Debentures due February 15, 1990, unless instructed by us to the contrary." On or about January 15, 1976, CMI caused $1,261,937.50 to be transferred to Citibank which funds were held by Citibank in a special account. This special account was not the account upon which checks would be drawn for payment of the interest to the bondholders.

On January 16, 1976, the waiver expired, the new credit agreements were not in effect, and CMI was in default in the payment of over $500 million due on the Senior Indebtedness. Between January 15 and February 11, 1976, Citibank had no communications with CMI or Bankers and was not advised whether the new credit agreement had been executed.

On February 11, 1976 Citibank was notified by telex from CMI and by letter from Bankers that CMI was in default on the Senior Indebtedness and therefore pursuant to Section 3.03 of the Indenture, no interest payment was to be made.[4] Citibank also received a telex from CMI requesting the return of the funds pursuant to the January 13, 1976 letter. These communications were not received by Citibank prior to two business days before payment was due: February 12, 1976 was a Thursday, Lincoln's Birthday and a bank holiday in the State of New York. Therefore, Friday was the only business day prior to Monday, February 16th, 1976, when the interest payment was to be made.[5] On this basis, Citibank stated that it would make the interest payments to the bondholders in accordance with the Indenture.

This action was promptly commenced by CMI against Citibank on February 13, 1976 to obtain a preliminary and final injunction enjoining Citibank from paying out the sum of $1,261,937.50. On February 13, 1976, the Court entered an Order to Show Cause and Temporary Restraining Order, forbidding Citibank from paying out the monies until authorized to do so by further order of the Court or written authorization from CMI. On March 8, 1976, all proceedings in this action were stayed by CMI's filing a petition under Chapter XI of the Bankruptcy Act in the United States District Court for the District of Massachusetts (76–0593–G). On June 28, 1976, the stay was lifted.

3. On or about December 22, 1975, Citibank drafted a proposed Notice to be sent to debentureholders advising them that defaults "have occurred and are continuing." Several drafts were thereafter prepared and discussed with CMI but the notice was never mailed to the debentureholders.

4. Before the letters were sent, counsel to CMI telephoned Citibank to confirm that the interest payments would not be made. Citibank orally informed CMI's counsel that the payments would be made since no formal notice of default had been received.

5. The Trust Indenture excluded weekends and New York bank holidays from the definition of business days. CMI's offices were located in Massachusetts where Lincoln's Birthday was not a bank holiday.

Bankers intervened in the action as a party plaintiff alleging, in addition to supporting CMI's claim to have the money returned to it, an independent right on behalf of the Senior Indebtedness that the money be delivered to Bankers for payment to the Senior Indebtedness. By stipulation the claims of Bankers were severed, to be tried separately at a later date if such claims were not resolved in this proceeding.

This decision, which constitutes our findings of fact and conclusions of law (Fed.R. Civ.P. 52(a)), is rendered after a trial on the merits of CMI's claim to the funds. Bankers was permitted to file an amicus brief with respect to CMI's claim. The position of Citibank is that, since it did not receive two days prior written notice of CMI's default, it is not prevented from making the payment of interest to the holders of the Debentures. CMI argues on the other hand that it should not be denied the right to call back the funds because: (1) the delay in giving notice under the indenture was short, inadvertent and caused no prejudice to the Trustee since it had taken no action towards payment or (2) alternatively, because the funds were deposited with Citibank under a letter agreement separate and apart from the Indenture permitting recall of the funds at any time prior to payment.

The initial question here is whether the funds were transferred to Citibank under the Indenture or whether they were transferred under a separate arrangement. If deposited under the Indenture, then the two-day notice provision of Section 3.04 is relevant. The mere fact that the transfer was conditioned upon CMI's right to recall the funds does not in and of itself demonstrate that the deposit was not pursuant to the Indenture since under section 3.04 of the Indenture, CMI could prevent the application by the Trustee of moneys deposited with it for the payment of interest. However, from all the surrounding circumstances, we find that Citibank did not receive the money under the Indenture and further

that Citibank had not acted with respect to the funds in its capacity as Trustee or paying agent in a manner which called into operation the provisions of the Indenture.

The Indenture is a lengthy and complex document purporting to comply with the Trust Indenture Act of 1939, 15 U.S.C. § 77aaa *et. seq.* The document is intended to control the rights and liabilities of the parties and the obligations of the Trustee are limited thereby.[6] Section 9.01 of the Indenture specifically provides as follows:

"The Trustee, prior to the occurrence of an Event of Default and after the curing or waiving of all Events of Default which may have occurred, undertakes to perform such duties and only such duties as are specifically set forth in this Indenture. In case an Event of Default has occurred (which has not been cured or waived) the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs."

See also 15 U.S.C. § 77*ooo* (c). The Indenture further permits the Trustee to rely, in the absence of bad faith, upon Officer's Certificates furnished to it and the Trustee is not obligated to make independent investigations concerning the truth of statements therein contained. In short, the Indenture and the Trust Indenture Act intend that the Trustee not be burdened with cumbersome duties and substantial obligations which might result in commercially unacceptable exposure to personal liability. Commercial reasonableness has therefore dictated that the Trustee be afforded such protection while at the same time Congress under the Trust Indenture Act has attempted to protect the bondholders from gross abuses by the Trustee.

Herein, CMI voluntarily advised Citibank of its financial difficulties and kept it advised concerning its efforts to cure the de-

---

**6.** For a discussion of the purposes of the various provisions contained in the Trust Indenture, *see generally* J. Kennedy & R. Landau, *Corporate Trust Administration and Management* (2d ed. 1975).

fault. In August, preceding the events involved in this litigation, CMI had similarly defaulted under the Senior Indebtedness. On that occasion, the interest payment due on August 15th on the Subordinated Debentures was delayed until the default on the Senior Indebtedness was removed. The interest payment was made in September, 1975. Given this prior default, it is understandable that CMI did not want the bondholders to be formally notified of its subsequent default in December. If the bondholders had exercised their right of acceleration, CMI would probably have lost its chance to negotiate new credit agreements for the Senior Indebtedness. Citibank on the other hand was placed in the position of deciding whether it would be in the best interests of the holders of the subordinated debentures to give notice or withhold such notice in the hope that CMI would cure its default on the Senior Indebtedness.

Although the record is not clear as to the exact negotiations which took place between CMI and Citibank, it is not disputed that they were in almost daily contact with each other up until Citibank was notified of the transfer of the funds on or about January 13th. Under the circumstances it appears that there was cooperation between CMI and Citibank and that Citibank did not limit its activities solely to relying on written information furnished to it. Citibank did more than sit back and wait for something to happen. Aware of the precarious financial condition of CMI, Citibank sought assurances on behalf of the bondholders and attempted to work out an arrangement to keep CMI from going under.

Although the record does not make explicit the motives behind the January 15, 1976 transfer of funds, it is clear that this did not constitute a payment of the interest. Nor does the evidence indicate that Citibank received the funds and held them in trust or otherwise for the benefit of the bondholders pursuant to the Trust Indenture. The January 13th letter clearly directed that the funds be held for the account of CMI and that the transfer was conditional. In accordance with their mutual understanding, Citibank placed the funds in a separate account, a new account in the name of CMI, not the account from which the bondholders would be paid. Moreover, the transfer of the funds was made almost one month prior to the accrual of CMI's obligation to make the interest payment—*i. e.,* one month prior to the accrual of the right of the bondholders to receive payments. The transfer was made at a time when Citibank could well have anticipated that the interest payment to the bondholders would be prohibited under the Indenture on the due date. There can be no doubt that, even though CMI was not technically in default under the Senior Indebtedness when the transfer was made, Citibank could not appropriate the funds for the benefit of the bondholders prior to the interest due date to avoid the consequences of an imminent anticipated default. An agreement to do so would be in violation of the Indenture. Counsel have pointed to no provision in the Indenture requiring CMI to transfer the interest payment to the Trustee one month before it was due.

We believe that Citibank cannot now validly claim that the transfer was made under the Indenture. Since the rights of the bondholders to the funds had not yet accrued and the funds remained untouched at the time CMI recalled the money, we reject Citibank's contention that the status of the funds changed automatically when the two-day notice was not received. The transfer was made and accepted subject to the conditions of the January 13th letter, not under the Trust Indenture, and nothing had occurred to change that status.

There are few decisions construing the provisions of trust indentures of the kind here involved but this Court believes that Citibank's reliance upon literal compliance with the two-day notice provision is misplaced. First, that provision does not control CMI's obligation to pay the interest due on February 15th. CMI's obligation is unconditional and this decision in no way reduces that obligation. Second, the notice provision is contained in Article Three of the Indenture, the provisions of which "are intended solely for the purpose of defining

the relative rights of the holders of the Debentures, on the one hand, and the holders of the Senior Indebtedness, on the other hand." (Section 3.02). The provisions are not meant to determine the obligations of the Trustee. This is not a case in which either the Trustee or any third party has relied on the failure to give the two-day notice. No one has changed position or otherwise acted or failed to act because the notice was not received.

The two-day notice provision cannot be used under the circumstances at bar to secure the rights of the bondholders in the particular funds deposited in a special account in the name of CMI, untouched for one month and transferred during a technical hiatus in CMI's default under the Senior Indebtedness.

Accordingly, after examination of all the circumstances, the relationship of the parties and the documents involved, this Court concludes that Citibank held the funds as agent for CMI, not as Trustee under the Indenture. The notification by CMI prior to Citibank's transfer of the funds was therefore sufficient to prevent the application of the funds to the payment of interest. Citibank is hereby enjoined from paying to the bondholders any portion of the $1,261,937.50 plus interest it now holds and is directed to pay the whole of said amount plus accrued interest to the Trustee in Bankruptcy of CMI for distribution.

In light of the decision reached herein, it is unnecessary to try the claims of Bankers with respect to these funds.

SETTLE ORDER.