In the Matter of KALEIDOSCOPE, INC., Debtor.

Frank W. SCROGGINS, Trustee in Reorganization Under Chapter X of the Bankruptcy Act of Kaleidoscope, Inc., Plaintiff,

v.

POWELL, GOLDSTEIN, FRAZER & MURPHY, A Georgia General Partnership, Defendants.

Bankruptcy No. B79–304A.

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Nov. 13, 1981.

Hicks & Scroggins, Hicks, Maloof & Campbell, Atlanta, Ga., for plaintiff.

Trotter, Bondurant, Miller & Hishon, Atlanta, Ga., for defendants.

## MEMORANDUM OF OPINION

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. D. KAHN, Bankruptcy Judge.

This matter is presently before the Court on the motion of Frank W. Scroggins, Trustee in Reorganization Under Chapter X of the Bankruptcy Act of Kaleidoscope, Inc., the above-named Debtor (hereinafter the "Trustee"), for an Order directing Powell, Goldstein, Frazer & Murphy, (hereinafter "Powell, Goldstein") and the members, associates, and employees thereof to turn over to the Trustee, and his counsel, all property of the Debtor in their possession, custody or control, including corporate records and all legal files amassed or created by Powell, Goldstein, its members, associates, and employees during the course of the legal representation by that firm of the Debtor.

In seeking to justify its refusal to turn over the corporate records of the Debtor in its possession and the legal files which it amassed or created during the course of its representation of the Debtor, Powell, Goldstein has cited a plethora of potential problems and circumstances which it contends stand between those records and files, this Court, and the Trustee.

Although the Court acknowledges that the concerns and objections stated by Powell, Goldstein may require some further effort and inquiry by this Court regarding very minor portions of the records and files in question, as well as a determination as to the validity and amount of the claimed at-

torney's lien of Powell Goldstein, none of the arguments put forth by Powell, Goldstein can cloud the Court's vision as to the simplicity of the true issue before the Court, the undisputed facts which frame that issue, and the legal conclusion which is compelled thereby.

Among all else, the single most important fact is that Powell, Goldstein stood in the fiduciary relationship of attorney-at-law to Kaleidoscope, Inc. This relationship lasted from on or about December 23, 1977 to at least January 17, 1979.[1] As evidenced by the nature of the description of the professional services rendered by Powell, Goldstein to Kaleidoscope in the billings sent for a substantial portion of the time in which this relationship existed,[2] the amount of those billings, and the claims made by Powell, Goldstein for unpaid fees, a substantial amount of legal work was performed by Powell, Goldstein for Kaleidoscope. In addition to its claims for unpaid fees of approximately $37,000.00, Powell, Goldstein was paid at least $53,892.25 by Kaleidoscope.

During the initial stages of its representation of Kaleidoscope, Powell, Goldstein played an integral role in the creation and implementation of a so-called "Stock Redemption Agreement" effective as of February 2, 1978 as a result of which Kaleidoscope: (a) transferred $200,000 to Charles K. Edmondson, Jr. (a 50% stockholder) through the escrow account of Powell, Goldstein; (b) paid Mr. Edmondson's legal expenses; (c) executed a promissory note to Mr. Edmondson for $550,000; and (d) gave a security agreement and financing statement, upon substantially all of its assets, to Mr. Edmondson to secure payment of that note. At that time, Powell, Goldstein also represented Susan L. Edmondson in the so-called "Stock Redemption Agreement", as a result of which she became the sole stockholder of Kaleidoscope.

During the final stages of its representation of Kaleidoscope, Powell, Goldstein participated, on behalf of its then clients Kaleidoscope, Susan L. Edmondson, Theodore J. Munchak, and, upon its incorporation, MOA Corporation, in the negotiation, creation, implementation, and execution of transaction effective as of January 12, 1979 whereby, under the purported terms of the security agreement previously executed by Kaleidoscope to Charles K. Edmondson, Jr.: (a) merchandise recently acquired mostly on credit by Kaleidoscope; (b) the work in process of catalogs to be mailed; (c) the mailing list of Kaleidoscope; (d) the name Kaleidoscope itself, and (e) other miscellaneous assets of Kaleidoscope, were transferred from Kaleidoscope by Charles K. Edmondson, as "attorney-in-fact" for Kaleidoscope to Theodore J. Munchak in return for the payment by Mr. Munchak to Mr. Edmondson (not Kaleidoscope) of the sum of $312,500. These assets were then further transferred by Mr. Munchak to MOA Corporation, which had been incorporated by Powell, Goldstein, and the stock of which was owned 70% by Mr. Munchak, and 30% by Susan L. Edmondson. Thereafter, Powell, Goldstein retained Jack M. McLaughlin, a former associate of Powell, Goldstein, to provide legal representation to Kaleidoscope and ceased its own formal representation of Kaleidoscope, but continued the representation of Mr. Munchak, Susan L. Edmondson, and MOA Corporation.

On February 5, 1979, Kaleidoscope filed a Chapter XI petition in a pending Involuntary Bankruptcy case, alleging that its liabilities exceeded its assets by $1,620,620.00. On that date the Court appointed Frank W. Scroggins as Receiver in that Chapter XI case.

On September 14, 1979, the Court granted a motion to convert the pending Chapter XI proceeding into a Chapter X proceeding, and appointed Frank W. Scroggins as Trustee in Reorganization Under Chapter X of the Bankruptcy Act of the Debtor.

---

1. The Court notes that the Trustee challenges this termination date of the attorney/client relationship between Powell, Goldstein and Kaleidoscope, and this Order is not intended to determine whether this relationship existed beyond that date.

2. The narrative descriptions stop as of October 31, 1978.

Frank W. Scroggins, first as Receiver, and then as Trustee, by and through his attorneys, has made repeated requests of Powell, Goldstein that it turn over to him the Corporate Minute Book and other property of the Debtor Kaleidoscope, Inc., including the legal files amassed and created by Powell, Goldstein during the course of its representation of the Debtor. After the requests for voluntary turn-over of these documents were refused, on August 29, 1979, the Trustee filed an action in this Court seeking a Turnover Order as to these documents.

In response to the Trustee's Complaint, Powell, Goldstein initially filed a motion to dismiss or to stay the action asserting, among other things, that this Court lacked jurisdiction to decide the matters set forth in the Trustee's Complaint since there was presently pending an action in the Superior Court of Fulton County, Georgia involving the identical factual and legal issues. On March 3, 1980, this Court entered an Order denying the motion of Powell, Goldstein to dismiss or stay this matter on that ground. Powell, Goldstein filed an Answer and also filed notice of appeal of that Order, but on June 4, 1980 sought and obtained a voluntary dismissal of that appeal by an order signed by the Honorable Richard C. Freeman, District Judge, entitled "*Consent Order Dismissing Appeal Without Prejudice.*"

Thereafter, while the Trustee and various parties to the Superior Court action sought to compromise and settle their existing controversies, one such settlement having been presented to this Court and ultimately rejected, this matter was not pursued.

On September 22, 1981, after all settlement efforts had apparently been exhausted and the litigation in Superior Court had begun to enter a phase of substantive activity, the Trustee filed a motion in this Court seeking leave to amend his Complaint against Powell, Goldstein to add alleged instances of additional efforts to obtain the records and property of Kaleidoscope in the possession of Powell, Goldstein, and other matters pertaining to both the motion of the Trustee for this Court to examine into

the reasonableness of any fees paid to Powell, Goldstein by the Debtor "in contemplation of bankruptcy" and also that portion of the Trustee's Complaint seeking to determine the nature, validity, and amount of the attorney's lien claimed by Powell, Goldstein. By this motion the Trustee also sought to obtain an expedited trial date from the Court as to at least that portion of his Complaint requesting a Turnover Order. This Court set October 26, 1981 as the hearing date for the Trustee's motion, and also set a pre-trial conference for this case at the same time.

At the hearing of this matter it was acknowledged by both the Trustee and Powell, Goldstein that with respect to that portion of the Trustee's Complaint seeking a Turnover Order there was no need for amendment to the Complaint, the essential facts were not in dispute, and an expedited trial of the remaining portions of the Trustee's action need not be had if the Court would decide the issue of the Trustee's right to a Turnover Order by motion. The Trustee thereupon made a motion for a Turnover Order, and the Court heard argument thereon from both the Trustee and Powell, Goldstein. The Court also permitted Powell, Goldstein the opportunity to address this matter by written brief filed within ten (10) days of the hearing, and has read and considered that brief as well as all other matters of record in this case.

The Court will now set forth the positions and contentions of the parties at interest in this matter, the facts necessary to decide this matter, and the Court's determinations with respect thereto.

With regard to the Corporate Minute Book, Powell, Goldstein initially refused this request on the ground that it asserted an attorney's retaining lien against the Minute Book for the payment of fees allegedly due to it for legal representation of the Debtor. The amount of these fees were initially stated by Powell, Goldstein to be approximately $18,500, but are now stated by them to be approximately $37,000. At the First Meeting of Creditors held in this case on August 30, 1979, Powell, Goldstein

agreed to allow the Trustee and his counsel to make use of the Minute Book during the examination of the Debtor's witness, but continued to refuse to relinquish possession of that book. For approximately the last six to eight months, the current attorneys for Powell, Goldstein have offered to make a copy of the Corporate Minute Book available to the attorneys for the Trustee, but have continued to refuse to relinquish possession of the original on the claim of an attorney's retaining lien to the book.

With regard to the legal files created or amassed by Powell, Goldstein during the course of its representation of the Debtor, Powell, Goldstein, and its attorneys, have offered to make substantial portions of these legal files available to the Trustee and his counsel for inspection, but have refused to turn over the originals of these files. In fact, from a review of the pleadings filed by Powell, Goldstein in this case, as well as the correspondence attached to those pleadings, it appears that Powell, Goldstein has offered to make available for inspection and copying by the Trustee all of these legal files except: (1) those documents which it has unilaterally removed therefrom and placed in a separate file which it has designated as "work product", and (2) those documents which it has previously asserted were covered by an attorney/client privilege belonging to its then clients Mr. Munchak, MOA Corporation or Mr. Chapman. During the conference of counsel called by the Court on November 10, 1981 to announce it's decision, it was disclosed to the Court that this so-called "work product" file was comprised of documents which had been culled from the original Powell, Goldstein files by the current attorneys for Powell, Goldstein—not by Powell, Goldstein while it was in possession of the files. Although Powell, Goldstein has not allowed the Trustee to examine this so-called "work product" file, it appears that Powell, Goldstein has allowed this file to be examined by the current attorneys for its former clients MOA Corporation and Mr. Munchak sometime after Powell, Goldstein was on notice that those former clients intended to assert a claim against Powell,

Goldstein based upon the Kaleidoscope transaction. Powell, Goldstein has also allowed the documents which may be subject to an attorney/client privilege to be inspected by attorneys for these former clients.

As to its refusal to turn over the originals of the legal files, Powell, Goldstein has asserted, in its own right, that it has title to all of these files, and its former client, Kaleidoscope (or the legal successor to the property rights of Kaleidoscope, the Trustee), has no proprietary interest in these legal files. Alternatively, Powell, Goldstein has advised the Court that even if title to the legal files might otherwise reside with the Trustee, as a factual matter Powell, Goldstein has co-mingled these legal files with the legal files of its other former clients Susan L. Edmondson, MOA Corporation, and Theodore J. Munchak (presumably as a result of the joint representation of these persons, along with Kaleidoscope, in the so-called "Kaleidoscope transaction"), and, according to Powell, Goldstein it is virtually impossible to separate the "Kaleidoscope" files from the other files.

In this regard, Powell, Goldstein has brought this matter to the attention of Theodore J. Munchak, MOA Corporation, and Donald L. Chapman, the agent for Mr. Munchak in the "Kaleidoscope transaction", and they have jointly filed an objection to the Trustee's Complaint for a Turnover Order against Powell, Goldstein, asserting that the Complaint of the Trustee for a Turnover Order against Powell, Goldstein seeks documents and records which are the property of Theodore J. Munchak, MOA Corporation, and/or Donald L. Chapman and not the property or documents or records of Kaleidoscope or Powell, Goldstein. These persons have also asserted that some of the documents and records may be subject to an attorney/client privilege based upon the attorney/client relationship of these persons to Powell, Goldstein in the civil action brought by the Trustee in the Superior Court of Fulton County, Georgia against these persons, Wayne Shortridge and Walter Moeling—two partners of Pow-

ell, Goldstein, Susan L. Edmondson, and Charles K. Edmondson, Jr., among others. They also assert that some of these documents may be subject to protection under "applicable laws" as proprietary or confidential business information.

Although no specific designation is made by these persons regarding the documents and records to which they assert a claim of title, the correspondence brought to the attention of the Court by Powell, Goldstein indicates that these persons have identified those documents to which they assert an attorney/client privilege as: (1) certain numbered documents, among thousands, to which Powell, Goldstein has offered the Trustee access (identified in a letter from their counsel dated May 11, 1981); and (2) certain unnumbered documents contained in the so-called "work product" file, to which Powell, Goldstein has refused the Trustee access (identified in a letter from their counsel dated August 21, 1981). Presumably, the documents which may be subject to protection as containing proprietary or confidential business information are among those same numbered and unnumbered documents.

In addition to Powell, Goldstein's general claim of title, and the asserted problem of "co-mingling" of original documents which may belong to other clients represented by it, Powell, Goldstein also asserts that it has the power to exclude from the examination of the Trustee certain portions of the legal files sought by the Trustee on the ground that these portions constitute "work product" which contain mental impressions, conclusions, legal opinions or legal theories of Powell, Goldstein. Although an exact description of this so-called "work product" is not provided, apparently it involves the legal analysis performed by Powell, Goldstein in connection with the transaction whereby assets were transferred from Kaleidoscope ultimately to MOA Corporation. Powell, Goldstein asserts that a determination has already been made by the Superior Court of Fulton County that the designated portions of the legal files constitute "work product" immune from discovery and examination by the Trustee, and further asserts that the

Superior Court has determined that the legal files are the "property" of Powell, Goldstein. The Trustee challenges these assertions by Powell, Goldstein by advising the Court that the Superior Court has acknowledged that the issues before it relate to *discovery* in that pending case, and do not pertain to the question of who has *title* to (and right to possession of) the legal files, which issue is before this Court. This Court agrees, and does not intend to delve into matters before the Superior Court.

■ This Court, sitting as a Reorganization Court Under Chapter X of the Bankruptcy Act has broad jurisdictional power, which includes *exclusive* jurisdiction over the Debtor *and its property*, wherever located. 11 U.S.C. § 511.

■ In the Court's opinion, this matter is an *in rem* proceeding to determine title to the Debtor's property where the facts are not in dispute, and does not involve any question of discovery or any other matter pending in the Superior Court of Fulton County.

Powell, Goldstein represented the Debtor as attorney-at-law from December 23, 1977 to at least January 17, 1979. During that period it also jointly represented Susan L. Edmondson in the so-called "Stock Redemption" transaction and in the so-called "Foreclosure" transaction involving the Debtor. It also jointly represented Mr. Munchak and Mr. Chapman, and first created and then represented MOA Corporation, jointly with Susan L. Edmondson and the Debtor, in the so-called "Foreclosure" transaction. During its joint representation of all these entities it created or amassed legal files in connection with its representation of Kaleidoscope alone, and, to a certain degree, in connection with its representation of its other clients, which, by its own admission, it has co-mingled with the legal files of Kaleidoscope. The portions of the combined legal files as to which Mr. Munchak, Mr. Chapman, and MOA Corporation assert a claim of ownership or privilege has been quantified, but the particular documents as to which these claims relate have not been

identified. In its own right Powell, Goldstein has asserted a claim of ownership generally to the legal files amassed or created during its representation of the Debtor, and has asserted a separate and specific claim of ownership to a small portion of that file which it describes as "work product".

■ An attorney at law is an agent of the highest rank for his principal—his client. *Jackson v. Fincher*, 128 Ga.App. 148, 195 S.E.2d 762; *Ampex Credit Corp. v. Bateman*, 554 F.2d 750 (CA 5, 1977). The possession of property of a Debtor by an agent for the Debtor presents no question of jurisdiction over the property by the Bankruptcy Court, because upon the filing of a Bankruptcy petition, the control which the Debtor possessed over its property in the hands of its agent passes to the Bankruptcy Court and title thereto passes to the Bankruptcy Court and its Trustee. *Shor v. McGregor*, 108 F.2d 421 (CA 5, 1939).

■ Generally, an agent may not dispute a claim of title made by a principal to property in the possession of the agent, Title 4, *Ga.Code Ann.* § 206; however, in the final analysis when a dispute arises as to the right of the agent or principal to possession of property in the hands of the agent, title to that property must, of necessity, be decided.

■ During the course of the hearing in this matter, the Court took judicial notice of the general practice of the bar of this District in the circumstances when the relationship of attorney and client is severed either by the termination of the attorney's services by the client, or by the withdrawal from representation of the client by the attorney. Having been a practicing attorney before coming to the bench with practical experience in these matters, having observed from the bench for more than a few years the conduct of lawyers who appear in this Court; and being generally familiar with the methods of practice of the bar, the Court can say that absent a dispute over fees (which will be addressed separately below) the practice followed when the attorney/client relationship is severed is that the client either picks up "his files" from the former attorney for delivery to a new attorney, or the client's files are transmitted directly from the former attorney to the new attorney. In either event it is the Court's understanding that during this transfer process full and free access to the client's legal files is given to the client or successor attorney by the former attorney, including the correspondence, pleadings, legal memoranda, and notes of the former attorney, and the originals of all these documents, with copies of some or all of them being retained by the former attorney, are transmitted to the client or new attorney, as the case may be.

Apparently, this process was in fact used by Powell, Goldstein when it became successor attorney to Dodd, Driver, Connell & Hughes in the representation of Kaleidoscope and Susan L. Edmondson, and statements made to the Court during the November 10, 1981 conference on this matter by the attorney for Powell, Goldstein and by the attorney from Dodd, Driver confirm the use of this process.

The uniqueness of the situation before the Court is that contrary to the normal situation in which a voluntary change or substitution of counsel takes place, the Court is confronted with a situation in which the Trustee, as legal successor in interest to the Debtor, has demanded that the former attorneys for the Debtor turn over to him the legal files created or amassed by them during their representation of the Debtor, and these attorneys have refused.

The question before the Court, therefore, is whether the law allows for or prescribes a different procedure to be followed in these circumstances. Based upon the authorities cited below, the Court concludes that there is no difference between the situations, and both the law, and common sense, compel the same result.

■ First of all, it is now well settled that the Trustee in a Chapter X Reorganization case succeeds to the rights and powers of the Debtor with regard to the attor-

ney/client relationship that existed between the Debtor and its pre-bankruptcy counsel. *In re Continental Mortgage Investors, Case No. 76–593–5*, (D.C.Mass.) 470 F.Supp. 59 (1979), *In re OPM Leasing Services, Inc.*, 13 BR 54 (Bkrtcy.USDCSDNY, June 10, 1981), affrm'd 13 BR 64 (USDCSDNY, 7/23/81)[3], *In re Amjoe*, CCH bankruptcy Law Reporter ¶ 66,131 (M.D.Fla., 1976).

■ The rights and powers of the Trustee, therefore, are co-extensive with whatever rights and powers the Debtor possessed with regard to the legal files amassed or created by Powell, Goldstein during the course of its representation of the Debtor.

Interestingly, the Court has been unable to find a reported case which involves a dispute between a client and the client's former counsel over the client's legal files. Rather, the only case which has been brought to the Court's attention which involves the issue of title and the right to possession of the legal files of a client is *In re Calestini*, 321 F.Supp. 1313 (N.D.Cal., 1979). In that case, a District Court was called upon to determine whether a trustee in bankruptcy succeeded to the rights of the bankrupt in the legal file which had been created or amassed by the attorney who had represented the bankrupt in a pre-bankruptcy personal injury action. In determining that title to the legal file of the attorney resided in the trustee, the District Court construed the meaning of the word "documents" as contained in § 70(a)(1) of the Bankruptcy Act (11 U.S.C. § 110(a)(1)) to include "pleadings, discovery papers, medical records, and other material in an attorney's legal file". In so ruling, the court reasoned that this definition of the documents was compatible with the rationale of that section—that the bankrupt himself, prior to bankruptcy, would have the right to demand, as his property, those doc-

uments which related to other of his property. The Court further stated, "In the instance of a legal file, the client has the right to the file. It is therefore 'property' of the client, and upon his adjudication as a bankrupt, title passes to the trustee". *In re Calestini, supra*, at p. 1316.

The correctness of this decision is supported by a common sense analysis of the relationship between attorney and client. When a client (natural or artificial) hires an attorney, the client is, in the final analysis, hiring that attorney for his ability to apply his knowledge, intellectual capacity, and experience to the solution of the legal problems of the client. Although we may, in the age of hourly billing, find it difficult to keep in focus the true value of an attorney's services, in the final analysis, it is the ability of the attorney to apply his "brain power" and skill based on experience, to the solution of the client's legal problems. This concept, as applied to bankruptcy cases, can best be seen from those cases which have emanated from the Fifth Circuit Court of Appeals setting forth the factors to be considered by a Bankruptcy Court in determining the amount of attorneys' fees to be awarded to attorneys for trustees in matters before the Court. See *In re U.S. Golf Corporation*, 639 F.2d 1197 (CA5, 1981); *Rose Pass Mines, Inc. v. Howard*, 615 F.2d 1088 (CA5, 1980), and *In re First Colonial Corp. of America*, 544 F.2d 1291 (CA5, 1977).

■ In some instances (albeit more and more rare in this age of technology), the services performed by an attorney for his client will be entirely intangible, in that the lawyer will merely apply his experience, intellectual capacity, and knowledge of the law to the solution of the client's problem without producing a single piece of paper. More realistically, considering modern commercial practice, the intellectual capacity,

---

**3.** It is interesting to note that in the *OPM Leasing Services, Inc.* case, *supra*, the order entered, and affirmed on appeal, provided, in pertinent part, that the law firm which represented the debtor corporation prior to the filing of the bankruptcy proceeding was required to "*communicate with the trustee and his counsel con-* *cerning its past representation of OPM and affiliated companies and to provide all information and documents in its possession, custody and control relating to that representation*". [Emphasis Added] *In re OPM Leasing Services, Inc., supra*, at p. 63.

experience, and knowledge of the lawyer will be manifested in tangible form, either by correspondence, legal research, internal memoranda, notes, and the like, which the lawyer will file away in the "client's file". Regardless of whether the lawyer's efforts remain, as in simple matters, intangible thoughts in his head, or, in more complicated matters, take on tangible form as correspondence, memoranda, notes and the like, the fee which is charged by the lawyer, and paid by the client, is based upon the "fruits of the attorney's labor". *That is what the client pays for, and it is that to which he is entitled.*

■ Simply put, the client is entitled to the *entire* file of his attorney, and, on the contrary, the attorney is *not* entitled to refuse to turn over that file or *any* portion thereof.

With regard to the intangible thought processes which remain in the attorney's head, the Court cannot do more, of course, than to require the attorney to make himself available to discuss the client's representation with the trustee and his counsel, as was done in the *OPM Leasing Services, Inc.* case, *supra*.[4] When it comes to a tangible form of expression of the "fruits of the attorney's labor", however, the Court can do more, by directing that those fruits be transferred to the person on whose behalf and at whose expense they were created, or, in the context of a bankruptcy proceeding, to his legal successor in interest, the Trustee.

The Court's view of this matter is also buttressed by Canon 2 of the Canons of Professional Ethics, which provides that "A lawyer should assist the legal profession in fulfilling its duty to make legal counsel available", Ethical Consideration EC2–32, and Disciplinary Rule 2–110, both of which provide, in pertinent part, that when a lawyer withdraws from representation of a client, it is his duty to deliver to the client all papers and property to which the client

is entitled, to cooperate with counsel subsequently employed, and to otherwise endeavor to minimize the possibility of harm.[5]

The Court concludes that title to the legal files created or amassed by Powell, Goldstein in the course of its representation of the Debtor, Kaleidoscope, Inc., belong to the Trustee of Kaleidoscope, not Powell, Goldstein.

■ Powell, Goldstein has, however, asserted a claim to parts of those files as their own "work product." In analyzing this matter, it must be kept in mind that the term "work product" is a court created term of art which is used to describe the "fruits of an attorney's labor" in a particular context. That is, "work product" is comprised of documents and other tangible things: (1) prepared in anticipation of litigation or for trial by or for a party or by or for that party's representative; and (2) the materials must contain the mental impressions, conclusions, opinions, or legal theories of the person preparing them. If the items sought do not satisfy *both* requirements, they do not constitute "work product". See, for a good discussion of this concept, the case of *Clarkson Industries v. Price*, 135 Ga.App. 787, at p. 789, 218 S.E.2d 921.

■ It is important to keep in mind the concept that "work product" applies in the *litigation* context, in which documents and other tangible information are sought in *discovery* by the attorney for an *adversary of the client* represented by the attorney seeking to protect such information from disclosure. As acknowledged in the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) documents and other things sought to be discovered in a civil case which fall within the definition of "work product" are generally not protected from discovery on the ground of attorney/client privilege, or any other privilege. In fact, it was the absence of any such protection on the grounds of privilege, which, in the final analysis, spawned the

---

4. See footnote 3, *supra*.

5. EC2–32 is found in *Ga.Code Ann.* Title 9 Appendix at p. 86, and Disciplinary Rule 2–110

is found at *Ga.Code Ann.* Title 9 Appendix at p. 96.

concept of "work product" protection for the "fruits of an attorney's labor" in the litigation context.

When analyzed in consideration of the value of an attorney's services, the need for, and limitation of, the "work product" doctrine can be clearly seen. As mentioned above, in the final analysis, what a client pays for, and the essence of a lawyer's value, is the application of the attorney's intellectual capacity, knowledge, and experience to the solution of his client's problem. In the context of a lawsuit, this process is measured, quite simply, by success or failure in representing the client's cause. If, in this context, one adversary were in a position to take advantage of the intellectual capacity, knowledge, and skill of his adversary by acquiring the tangible expressions of that attorney's thought processes through discovery, then the value of that attorney's services, and his ability to solve his client's problems, would be diminished accordingly. The concept of "work product", therefore, is built of the necessity for protecting both the attorney, and his client, from unwarranted intrusions by adversaries in civil litigation under the guise of discovery.

From this analysis, it can be seen that the doctrine of "work product" has no application to the situation in which *a client*, or the legal successor-in-interest to a former client, seeks to obtain documents and other tangible things created or amassed by an attorney during the course of that attorney's representation of that client.

Interestingly, the case of *Goldsmith v. Pyramid Communications, Inc.*, 362 F.Supp. 694 (SDNY, 1973), cited by Powell, Goldstein in its Brief in Opposition to the Trustee's Motion, supports the Court's view of this situation. In the *Goldsmith* case, attorneys who had conducted a legal analysis of the merits of their clients' proposed crossclaims against other defendants in the case sought to withdraw from representation of those clients for the reason that they had expressed an opinion that the crossclaim of the clients lacked merit. The Court noted that the clients had refused to be persuaded by this opinion, because they had obtained independent and contrary legal advice from other counsel of their own choice. In allowing a withdrawal of counsel under those circumstances, the Court directed that the defendants would have 45 days for a substitution of counsel, and further directed that the attorneys seeking to withdraw "shall deliver copies of all papers and materials in their possession relating to the action or proposed crossclaim, to the successor attorneys, on demand, against receipt." The Court further directed that discovery be stayed for the period during which substitution of counsel was being arranged in order to permit selection of new counsel, "and to allow new counsel to become familiar with the issues." See *Goldsmith v. Pyramid Communications, Inc., supra* at p. 698. The clear implication of the Court's language is that the successor attorneys were to have access to and the ability to review and analyze the legal opinion of its predecessor counsel regarding the lack of merit of its clients crossclaim. Surely, in the context of a request for that opinion by its adversaries in the civil case, that legal opinion would be held to be "work product". As to its clients, however, those "fruits of the attorney's labor" were appropriately given to successor counsel.

Powell, Goldstein cites the *Goldsmith v. Pyramid Communication, Inc.* case to support its contention that this Court should not allow the Trustee to have the *originals* of the legal files in its possession, stressing the use of the word *copies* by the Court in *Goldsmith*. Regardless of whether the use of the word *copies* was intentional or inadvertent in that case, in the context of this case, in which serious allegations have been made regarding the conduct of Powell, Goldstein, and the participation by several of its members in transactions which are attacked as fraudulent by the Trustee in Superior Court, this Court can not say that it is either unreasonable or inappropriate for the Trustee to request, and this Court to grant, the transfer of possession of the *original* files from the attorneys whose conduct is at question to the fiduciary appointed by this Court to examine into the affairs of the

Debtor and to pursue causes of action on behalf of the Debtor.

The Court is not dissuaded from its view by the case of *American Mutual Liability Insurance Company v. Superior Court*, 38 Cal.App.3d 579, 113 Cal.Rptr. 561 (1974), which is attached to the Brief of Powell, Goldstein in this matter. That case deals with an attempt by an adversary to obtain the legal files of an insurance company, which was jointly represented, along with its insured, by an attorney whom the insurance company had retained to provide for the insured's defense. Based upon testimony by the insured at one of several medical malpractice actions, asserting a defense of reliance upon the advice of counsel which was allegedly in error and motivated by evil designs on behalf of his insurance company client, an attorney representing the plaintiff suing the insured doctor sought to obtain the files which had been created or amassed by the attorney who had previously jointly represented both the insurance company and the insured. In reversing the decision by the trial court, which had entered a broad order authorizing the disclosure of all materials contained in the attorney's files, the Court ruled, essentially, that the lower court erred in not focusing its order to protect from disclosure to this adversary, and other potential adversaries of the insurance company, any matters which might be protected by an attorney/client relationship which existed between the lawyer hired by the insurance company, and the insurance company itself, and further determined that the attorney who represented the insurance company and the insured could exclude his "work product", which he had apparently shared with the insurance company, one of his clients, from the view of his adversary. This case, frankly, is inapposite to the situation presently before the Court.

More germane to the issues before the Court is the case of *LaRocca v. State Farm Mutual Automobile Insurance Company*, 47 F.R.D. 278 (SDNY, 1969). In that case, an insured, who, as plaintiff, was suing his insurance company for breach of fiduciary duty on the theory that the insurance company had refused to settle an earlier case in good faith (thereby exposing him to an excess verdict over and above his policy limits) sought to view the entire file of the attorney who had represented him and the insurance company in that prior action. In determining that there was no attorney/client privilege barring such a demand by the insured, the District Court held that since the lawyer had represented both parties, communications from either party were not privileged from disclosure to the other, and further reasoned that both the insurance company and the attorneys occupied a fiduciary capacity with respect to the interest of the plaintiff insured, further compelling disclosure.

██ As mentioned above, in order for documents and other tangible things to qualify as "work product", they must be created "in contemplation of litigation," and for documents prepared prior to the filing of a lawsuit, the prospect of litigation must be identifiable because of *specific claims* that have already arisen. See *Panter v. Marshall Field & Company*, 80 F.R.D. 718 (N.D.Ill., 1978), and *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 47 F.R.D. 334 (S.D.N.Y., 1969).

██ This criteria cannot be met as to documents generated during the course of the representation of the client who itself (or through its legal successor) is seeking the documents in question. It seems to the Court that a lawyer cannot be heard to say that during the course of the representation of a client, that attorney created documents which contained mental impressions, legal theories, or the like which the attorney can shield from the view of his client for the reason that the documents were created in contemplation of litigation with that client. Not only would such a statement, in the Court's opinion, constitute an admission of a breach of the fiduciary duty owed by the attorney to the client, the Court does not believe that the law permits an attorney to protect such documents from the scrutiny of a client if in fact they exist.

■ For example, suppose the Trustee and Powell, Goldstein, had no quarrel—could anyone seriously contend that the Trustee could not pick up the legal files of Kaleidoscope from Powell, Goldstein? The answer must be, NO! The fact that coincidentally the Trustee is litigating with Powell, Goldstein does not alter the situation, and does not somehow encumber the Trustee's title to these files. To again emphasize the simple and all-important fact in this situation—an attorney is in a *fiduciary* relationship to his client, owing the highest duty of good faith and diligence, and has no right or ability to unilaterally cull or strip from the files created or amassed during his representation of that client documents which he determines the client is not entitled to see. The client is either entitled to all of the file or none of it.

■ Moreover, the Court does not believe that when an attorney jointly represents more than one client in a transaction, the attorney can selectively choose to remove documents from the legal files created or amassed during that joint representation either on the grounds that the legal files are the property of other of the jointly represented clients, the property of the attorney, or constitute "work product" belonging to the attorney which he can shield from the view of one of the jointly represented clients. Rather, the Court believes that with regard to legal files created or amassed by an attorney during the course of joint representation of more than one client, the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files.

In the case of *Garner v. Wolfinbarger*, 430 F.2d 1093 (CA 5, 1970), the Court of Appeals recognized what it described as the "common interest exception" to the attorney/client privilege, in stating: "In many situations in which the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other. This is true even where the attorney acts jointly for two or more persons having no formalized business arrangement between them."

This same concept has been recognized most recently in the State of Georgia in the case of *Gearhart v. Etheridge*, 232 Ga. 638, 208 S.E.2d 460 (1974), in which the Supreme Court of Georgia, ruling in a case involving the scope of the accountant-client privilege drew analogies from cases involving attorneys and clients in Georgia, and stated as the rule: "If two or more persons jointly consult an attorney for the purpose of having him prepare a deed or contract for them, the communications which either makes to the attorney are not privileged in the event of any subsequent litigation between the parties. In such situations it is considered that the attorney does not have an attorney/client relationship with either of the joint parties."

Obviously, therefore, as a result of the joint representation by Powell, Goldstein of Kaleidoscope and Susan L. Edmondson, and the joint representation by Powell, Goldstein of Kaleidoscope, Susan L. Edmondson, Theodore J. Munchak, and MOA Corporation, there is no attorney/client privilege which can be asserted by any of these parties against any other of these parties with regard to communications pertaining to the subject matter of the joint representation. The only question remaining is whether or not Powell, Goldstein can assert a claim of ownership in any documents created during the course of its joint representation of these parties which it is entitled to shield from the view of one of the parties, Kaleidoscope (or its Trustee), in particular, since apparently that it has shown all of these documents to the attorneys for some of its other jointly represented clients.

■ In considering this matter, the Court perceives no difference between the situation in which an attorney represents one client as compared in the situation in which an attorney jointly represents multiple clients. That is, an attorney, as any agent, owes the highest duty of fidelity and good faith to his client—his principal. When the attorney simultaneously repre-

sents two or more clients, then the attorney owes this duty of fidelity and good faith to each of the clients he represents. He cannot prefer one over the other, and each is entitled to the fruits of his labor. See, generally, the annotation in 4 ALR 4th, beginning at p. 765, titled *"Applicability Of Attorney-Client Privilege To Evidence Or Testimony In Subsequent Action Between Parties Originally Represented Contemporaneously By The Same Attorney, With Reference To Communication To Or From One Party.* See also, *LaRocca v. State Farm Mutual Automobile Insurance Co., supra.* The *LaRocca* case is also particularly in point on the question of whether an attorney who represents two parties jointly will be allowed to assert a "work product" privilege to the disclosure of materials contained in the file of that attorney, and generated while the attorney represented both an insurance company and an insured. In that case, the Court directed the attorney to produce all files created or amassed by him during the course of his joint representation.

See also the case of *Henke v. Iowa Home Mutual Casualty Company,* 249 Iowa 614, 87 N.W.2d 920 (1958), in which the Court held that a "work product" restriction to discovery was not applicable so as to restrict the access of one former client of an attorney who jointly represented that client (an insured) and another client (an insurance company) with regard to papers and writings which were prepared during the time when the attorney jointly represented those clients, since the original availability of such information to both parties did not cease when a controversy arose between the two former clients.

▪ With respect to ownership of the files created during joint representation, the Court concludes that the rationale of the attorney/client privilege cases involving joint representation, coupled with the rationale of the cases and authorities cited above respecting ownership of legal files involving one client, compel the conclusion that each of the jointly represented clients own an undivided interest in the legal files created during the course of their joint representation by an attorney, and each client has an equal right to access and possession of those files. In the context of this case, the Court concludes that initially possession of the original documents contained in all such joint representation files should be transferred to the Trustee under the procedures hereinafter set forth.

Based on the foregoing, the Court concludes that all legal files created or amassed by Powell, Goldstein during the course of its representation of Kaleidoscope, Inc., including all legal files created or amassed while Powell, Goldstein jointly represented Kaleidoscope and Susan L. Edmondson, Theodore J. Munchak, MOA Corporation, Donald L. Chapman, or any other person, and including any legal memoranda, correspondence, inter-office memoranda, notes, and the like pertaining to matters embraced within the scope of the representation of Kaleidoscope, Inc., or the joint representation of Kaleidoscope and any other person, as the case may be, are the property of Kaleidoscope, Inc., that title to that property has passed to the Trustee, and that Powell, Goldstein should be required to turn over all of that property to the Trustee, *instanter.*

The Court further concludes that with regard to all such legal files created and amassed during joint representation of Kaleidoscope and other persons, such other persons have a joint right of access to and possession of the legal files in question.

With regard to Susan L. Edmondson, during the course of the conference called by the Court and held on November 10, 1981, in which the Court's decision was announced, counsel for Mrs. Edmondson indicated that he, on her behalf, had no objection to the Trustee holding, examining, or making use of files created or amassed during joint representation by Powell, Goldstein of Kaleidoscope, Inc. and Susan L. Edmondson.

During the course of the same conference, counsel for Theodore J. Munchak, MOA Corporation, and Donald L. Chapman indicated that he, on their behalf, did have

an objection to the Trustee's possession and use of these files; however, upon discussion, it was concluded that this objection centered primarily upon the protection to be afforded to information contained in those files. It was announced to the Court by counsel for said persons and counsel for the Trustee that the parties were very close to agreeing to the entry of a Stipulation and Order in the Superior Court of Fulton County which would govern the disclosure and use of the information contained in these legal files, and potentially covering other files and documents. The Court concludes that it would be appropriate for the legal files covered by such joint representation to be subject to the terms of a similar Stipulation and Order, provided that said Stipulation and Order can be agreed to and submitted to the Court forthwith. It was further announced, after discussion, at said conference, that counsel for the Trustee and counsel for said persons would review the legal files created or amassed during said joint representation, and would seek to agree on who would be entitled to possession of the original documents contained in these files. Since each side announced that it believed it would be agreeable to having copies of the documents in those files, the Court does not perceive this to be a problem which requires specific direction in the form of an Order at this time. In the event the parties are unable to agree, the Court will entertain this matter at a later date, and enter an appropriate Order.

At the same conference held on November 10, 1981, the Court invited a representative from Dodd, Driver, Connell and Hughes, counsel for Charles K. Edmondson, Jr. and Charles Keath Limited to attend said meeting, since Dodd, Driver had been general counsel to Kaleidoscope, Inc. prior to the commencement of representation of Kaleidoscope by Powell, Goldstein. It was announced by the attorney representative from Dodd, Driver that in reviewing the files in the possession of Dodd, Driver, it had been discovered that there were several Kaleidoscope files still in their possession regarding matters in which Dodd, Driver had represented Kaleidoscope as counsel.

He advised the Court that Dodd, Driver would be willing to turn over these files to the Trustee without the necessity of any proceeding.

 As mentioned above, Powell, Goldstein initially refused to turn over the corporate records of Kaleidoscope on the ground that it had a valid attorney's retaining lien for unpaid fees resulting from services rendered to Kaleidoscope. The attorneys for Powell, Goldstein have advised the Court that they are now willing to relinquish possession of the originals of these corporate records upon the entry of an Order by this Court which protects their claim for fees to the extent that it is otherwise valid. The Court concludes that it has the power to enter an Order requiring an attorney to deliver up papers of a client as to which the attorney claims a retaining lien upon the condition that security is given for such sum as may be found to be due. See *In re San Juan Gold, Inc.,* 96 F.2d 60 (CA 2, 1938), see also *Browy v. Brannon,* 527 F.2d 799 (CA 7, 1976). The Court also concludes that the power and authority to determine the amount, if any, due an attorney under a retaining lien is within the exclusive jurisdiction of this Court. See *In re Samuel August & Company,* 228 F.Supp. 443 (DNJ, 1964), and *Jackson v. Vance,* 179 F.2d 154 (CA 10, 1950). Additionally, the question of the validity and amount of any lien which Powell, Goldstein may have has been specifically brought in issue in this Court as another Count to the Complaint filed by the Trustee in this particular matter. The issue of attorneys' fees of Powell, Goldstein is also before the Court under the simultaneous motion filed by the Trustee in this matter seeking to have this Court inquire into the reasonableness of fees paid by the Debtor to Powell, Goldstein "in contemplation of bankruptcy."

 In consideration of all the above factors, the Court determines that it would be appropriate for the Court to grant to Powell, Goldstein, simultaneously with the surrender of possession by Powell, Goldstein of the property of the Debtor in its posses-

sion, a claim to be treated as an expense of administration priority claim for any unpaid fees for professional services rendered to the Debtor which this Court determines may be due and owing; provided, however, that the awarding of any such administrative expense claim shall be conditioned upon the filing by Powell, Goldstein of an answer to the Trustee's Complaint, as amended, which amendment is hereby authorized and approved by the Court since it relates to matters within the scope of the portion of the Complaint seeking a determination of the validity and amount of said attorneys' fees and any lien which Powell, Goldstein might have against property of the Debtor; and, provided further, that Powell, Goldstein shall file with this Court within ten (10) days of the entry of this Order a full and complete statement of its claim, including a detailed statement of the nature and amount of professional services rendered to the Debtor, by date, for which it claims fees have not been paid.

Based upon the Findings of Fact and Conclusions of Law embodied herein, the Court will enter an Order of even date herewith.