In the Matter of: **MICHIGAN BOILER AND ENGINEERING COMPANY,** Debtor.

**Bankruptcy No. 86–06680–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 1, 1988.

---

**21.** 28 U.S.C. § 157(c)(1) states:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

Hertzberg, Jacob & Weingarten, P.C. by I. William Cohen, Detroit, Mich., for debtor.

Jaffe, Snider, Raitt & Heuer, P.C. by Jay Welford, Detroit, Mich., for trustee.

Kimberly W. Stout, Detroit, Mich., for Robert Larson.

Amy B. Hartmann, Detroit, Mich., for Harry Somerset, III.

## MEMORANDUM OPINION

GEORGE BRODY, Bankruptcy Judge.

This matter involves questions relating to the applicability of the attorney work product, attorney-client, and joint defense privilege.

On December 30, 1986, Michigan Boiler and Engineering Company (debtor) filed a voluntary Chapter 11 bankruptcy case. On February 5, 1987, Mr. Charles Collins was appointed trustee of the debtor's estate. On February 24, 1987, the court entered an order directing that Mr. Robert Larson, Chairman of the Board, director and shareholder of the debtor, Mr. James P. McGuire, Secretary/Treasurer and director of the debtor, Mr. Harry Somerset, III, Chief Executive Officer of the debtor, and William Cohen and Peter Nathan, partners in the law firm of Hertzberg, Jacob and Weingarten (firm), attorneys for the debtor, appear for examinations pursuant to Bankruptcy Rule 2004 and to produce at their examinations certain designated documents. Mr. Cohen appeared at his scheduled 2004 examination, but failed to produce a file consisting of notes of interviews with various corporate officers of the debtor. The trustee then served the firm with a subpoena to compel the production of the file. The firm moved to quash the subpoena contending that the file was protected by the work product doctrine and attorney-client privilege. Thereafter, Messrs. Larson and Somerset moved to intervene to

permit them to join in the firm's motion.[1] The motion was granted. A hearing on the motion to quash was held, at which members of the firm, Mr. Cohen, Mr. Abraham Singer and Mr. Michael Traison testified, and transcripts of depositions of the intervenors were submitted into evidence.

The facts elicited at the hearing are as follows. The firm was first approached in May of 1986 by James McGuire, a director of the debtor, to discuss possible engagement of the firm to represent the debtor, other related corporate entities, and Mr. McGuire personally. Problems with respect to the debtor were discussed, but the firm was not retained at that time.

Thereafter, in August, 1986, a lawsuit was filed in the Circuit Court for the County of Oakland, State of Michigan, by Mr. Larry Masserant and Mid–American Gunite, Inc. against the debtor, Mr. Robert Larson, Mr. Harry Somerset III, Mr. James McGuire, Clifford Larson, Anthony Opalewski, Michigan Ohio and Metal Fabricators and MBE Mechanical. After this lawsuit was filed, Mr. McGuire and a Mr. Tamborello, a business consultant of the debtor, again came to see Mr. Cohen with respect to the problems involved in the lawsuit. The firm agreed to represent the debtor and filed an answer on behalf of both the debtor and the named individuals. This lawsuit eventually was settled but, as of the date of the hearing on the motion, the suit had not been formally dismissed.

In early December, 1986, the debtor and Robert Larson and Harry Somerset were named, along with other individuals and corporate entities, as defendants in a lawsuit filed in the Circuit Court for the County of Wayne, State of Michigan, by Brand Asbestos Control Co., Inc. The firm undertook to represent the named defendants in that lawsuit. In addition, the firm represented the debtor and the named individuals in a third lawsuit—Tek–Matik, Inc. v. Pro–Coat Systems, Inc., filed on December 22, 1986, in the Oakland County Circuit Court, State of Michigan. The firm withdrew from the lawsuit in April, 1987.

The file which the trustee seeks to obtain contains 174 pages of notes. Counsel for Larson and Somerset, for the purpose of this motion, divided the file into 56 parts. Each part is referred to as a document. Some of the documents contain but one page, but at least one of them contains as many as 22 pages. Counsel for Larson and Somerset also highlighted the entries appearing in the documents, which they contend are not subject to discovery. Approximately two thirds of the documents contain more than one highlighted entry.

The file was submitted to the court for *in camera* review. Since the file did not reveal whom the firm was representing when the challenged entries were made, Mr. Cohen was called as a witness to identify each highlighted entry to indicate whom the firm was representing when the challenged entries were made. Mr. Cohen, after examining the file, testified that all of the documents contain entries related, in whole or in part, to representation of the corporate entity; that none of the entries were made while the firm was representing Larson and Somerset individually; that one of the tabbed documents, number 21, was not produced in the firm; and that document number 20 is missing from the file. He further testified that all of the entries fall into three categories, and marked the first entry of each document to designate the category of the entry. Unless otherwise noted, the category assigned to the first entry of a document applies to all entries on that document. The categories are as follows: 1) entries made while the firm was representing the debtor only; 2) entries made while the firm was representing the debtor and the individuals jointly; and 3) entries of statements made by Larson and Somerset to the firm concerning corporate matters when the firm was representing the debtor only—statements

---

1. James McGuire originally joined in the motion, but subsequently withdrew his opposition to production of the file.

which, if disclosed, may expose the officers to personal liability.[2]

The trustee, on behalf of the debtor, waived whatever privilege was available to the debtor.

The court will first consider whether the work product privilege is available to the firm as to any of the entries in the file.

*Attorney Work Product*

■ The attorney work product doctrine " 'is distinct from and broader than the attorney-client privilege.' *United States v. Nobles*, 422 U.S. 225, 238, n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975)." *Advance Publications, Inc. v. United States (In re Antitrust Grand Jury)*, 805 F.2d 155, 163 (6th Cir.1986).

An attorney's work product may consist of factual material—"written or oral information transmitted to the attorney and recorded as conveyed by the client," or may consist of so-called opinion work product, i.e., "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments or legal theories." *Antitrust Grand Jury*, 805 F.2d at 163.

> Work product consists of tangible and intangible material which reflects an attorney's efforts at investigating and preparing a case, including one's pattern of investigation, assembling of information, determination of the relevant facts, preparation of legal theories, planning of strategy, and recording of mental impressions. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); *Besly–Welles Corp. v. Balax, Inc.*, 43 F.R.D. 368, 371 (E.D.Wis.1968).

*In re Grand Jury Subpoena Dated November 8, 1979*, 622 F.2d 933, 935 (6th Cir.1980) (per curiam). Opinion work product has generally been shielded from discovery. *In re Murphy*, 560 F.2d 326, 336 (8th Cir.1977). In contrast, fact work product, unless otherwise privileged, is subject to discovery if the party seeking discovery establishes a " 'substantial need of the materials in the preparation of [its] case' " and is " 'unable without undue hardship to obtain the substantial equivalent of the materials by other means.' " *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir.1976) quoting from Fed.R.Civ.P. 26(b)(3).[3] *See also Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1946).

"[T]he work product doctrine is designed primarily to preserve the 'integrity of the adversarial system' by preventing the discovery of certain documentation prepared by an attorney or his agent in anticipation of litigation." *In re Federal Copper of Tennessee, Inc.*, 19 B.R. 177, 182 (Bankr.M.D.Tenn.1982). The work product doctrine, when applicable, serves to protect disclosure to an adversary. *In re Kaleidoscope, Inc.*, 15 B.R. 232, 242 (Bankr.N.D.Ga.1981). It has no application in cases where a client "seeks to obtain documents and other tangible things created or amassed by an attorney during the course of the attorney's representation of that client." *In re Kaleidoscope, Inc.*, 15 B.R. at 242; 4 J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 26.64[2] (2d ed. 1987). "In the instance of a legal file, the client has the right to the file. It is therefore 'property' of the client, and upon his adjudication as a bankrupt, title passes to the Trustee." *In re Calestini*, 321 F.Supp.

---

**2.** Mr. Cohen's testimony was supplemented by letters dated May 4, 1988, May 9, 1988 and May 24, 1988.

**3.** The Federal Rule of Civil Procedure 26(b)(3) reads as follows:
> (3) *Trial Preparation Materials.*
> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

1313, 1316 (N.D.Cal.1971). And where legal files are amassed during the joint representation of a number of clients, "the entire contents of those legal files belong jointly to the clients in question, with each having an undivided ownership interest in, and equal right of access to, all of those files." *In re Kaleidoscope, Inc.*, 15 B.R. at 244. The entire file was compiled during the firm's representation of the debtor and the debtor and Larson and Somerset jointly. The work product doctrine would not have been available to the firm to deny the debtor access to the file prior to the filing of the bankruptcy case. Since the trustee succeeds to the debtor's interest in the file, the work product doctrine is not available to the firm to deny the trustee access to the file.

It remains necessary to consider what entries, if any, are protected by the attorney-client privilege or the joint defense privilege. It is the contention of Larson and Somerset that the category three entries, the entries made while the firm was representing the debtor only, but which may expose Larson and Somerset to individual liability, are protected from disclosure by the attorney-client privilege. They additionally contend that the category two entries, the entries made by the firm while the firm was representing the debtor and them jointly, are protected by the joint defense privilege. Each of these contentions will be considered separately.

*Attorney–Client Privilege*

█ "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." 8 J. Wigmore, *Evidence* § 2290 (McNaughton rev. 1961). The privilege may attach to oral and written communications. *See* Hoffman, *The Attorney–Client Privilege in Proceedings Under the Bankruptcy Act of 1898 and the Bankruptcy Reform Act of 1978*, 53 Am.Bankr.L.J. 231, 243 (1979).

The purpose of the attorney-client privilege "is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447, 450 (6th Cir.1983), *cert. denied sub nom. Durant v. United States*, 467 U.S. 1246, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984); Fed.R.Evid. 501; *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).

The privilege applies

(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.1964), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964), quoting 8 Wigmore, *Evidence* § 2292, at 554. *See also Humphreys, Hutcheson and Moseley v. Donovan*, 755 F.2d 1211, 1219 (6th Cir.1985); *United States v. United Shoe Mach. Corp.*, 89 F.Supp. 357 (D.Mass.1950).

The attorney-client privilege is available to corporations as well as individuals. *Upjohn Co. v. United States*, 449 U.S. at 390, 101 S.Ct. at 683. "The administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 1991, 85 L.Ed.2d 372 (1985). Since a corporation can act only through its agents, the power to waive the corporate client privilege rests with existing corporate management.

[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best

interests of the corporation and not of themselves as individuals. (Footnote omitted). See, *e.g., Dodge v. Ford Motor Co.,* 204 Mich. 459, 507, 170 N.W. 668, 684 (1919).

*CFTC v. Weintraub,* 471 U.S. at 348–49, 105 S.Ct. at 1991. When a corporation files a petition in bankruptcy and a trustee is appointed, the trustee displaces existing management. Thus, in a bankruptcy context the privilege rests with the trustee and not with displaced management. *CFTC v. Weintraub,* 471 U.S. at 354, 105 S.Ct. at 1994. However, the directors or officers of a corporation may have an individual attorney-client privilege apart from that of the corporation. *Grand Jury Proceedings, Detroit, Michigan, August, 1977 (In re Jackier),* 434 F.Supp. 648, 650 (E.D.Mich. 1977), *aff'd,* 570 F.2d 562 (6th Cir.1978); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 611 n. 5 (8th Cir.1977); *United States v. Keplinger,* 776 F.2d 678, 701 (7th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986); *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 124 (3d Cir.1986); *In re Grand Jury Investigation No. 83–30557,* 575 F.Supp. 777, 780 (N.D. Ga.1983); *Odmark v. Westside Bancorporation, Inc.,* 636 F.Supp. 552, 555 (W.D. Wash.1986). To sustain a claim of attorney-client privilege, corporate officers must establish the following:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*In re Bevill, Bresler and Schulman Asset Management Corp.,* 805 F.2d at 123, quoting *In re Grand Jury Investigation No. 83–30557,* 575 F.Supp. at 780. *See also United States v. Goldfarb,* 328 F.2d 280; *Humphreys, Hutcheson and Moseley v. Donovan,* 755 F.2d at 1219; 8 J. Wigmore, *Evidence,* § 2292, p. 554.

The party asserting the attorney-client privilege bears the burden of establishing grounds for invoking the privilege. *United States v. El Paso Co.,* 682 F.2d 530, 538, *reh'g denied,* 688 F.2d 840 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984). Moreover, the privilege is to be narrowly construed:

> Because the attorney-client privilege affords to a party the right to withhold information, thereby impeding an investigation, an administrative proceeding, or a trial in its search for truth, the privilege has been confined to a narrow and limited enclave.

*In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029, 1033 (S.D.N.Y. 1975).

For the attorney-client privilege to apply, the corporate officer must establish the existence of all the elements set forth in *In re Bevill.* Larson and Somerset have not done so. Basic to the attorney-client privilege is the existence of an attorney-client relationship. When Larson and Somerset made the statements that they now seek to exclude from discovery, they were not represented by the firm. The statements were made by Larson and Somerset not as clients of the firm but as officers of the debtor during the course of the firm's representation of the debtor. Statements of a corporate officer to corporate counsel are not protected from disclosure merely because the statements may expose the officer to personal liability. The attorney-client privilege is not available to Larson and Somerset to shield the category three entries from discovery.

*Joint Defense Privilege*

The joint defense privilege applies to communications made by two or more parties to the same attorney in pursuit of a common defense.

When two or more persons, each having an interest in some problem or situation, jointly consult an attorney, their confidential communications with the attorney, though known to each other, will of course be privileged in a controversy of either or both of the clients with the outside world, that is, with parties claiming adversely to both or either of those within the original charmed circle.

McCormick, *Evidence* § 91, p. 139 (2d Ed. 1981); *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d at 126. The policy basis of the joint privilege doctrine is explained in *In re Grand Jury Subpoena* as follows:

Where an attorney furnishes a copy of a document entrusted to him by his client to an attorney who is engaged in maintaining substantially the same cause on behalf of other parties in the same litigation, ... the communication is made not for the purpose of allowing unlimited publication and use, but in confidence, for the limited and restricted purpose to assist in asserting their common claims.... For the occasion, the recipient of the copy stands under the same restraints arising from the privileged character of the document as the counsel who furnished it. *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964), *quoting Schmitt v. Emery*, 211 Minn. 547, 2 N.W.2d 413 (1942).

*In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381, 387 (S.D.N.Y.1975). In order to establish the existence of a joint defense privilege, the party asserting the privilege must show that:

(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived. *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381 (S.D.N.Y.1975).

*In re Bevill*, 805 F.2d at 126. The category two entries consist of statements made by Larson and Somerset to the firm when the firm was representing the debtor and Larson and Somerset in one of the three lawsuits in which they were named as joint defendants. The joint defense privilege protects the statements from disclosure to third parties. *See In re Blier Cedar Co., Inc.*, 10 B.R. 993, 1001 (Bankr.D.Me.1981). The statements, however, are not protected from disclosure in a subsequent dispute between the clients. *Starns v. Hendrick*, 56 B.R. 280, 282 (Bankr.M.D.La.1985); *In re Blier Cedar Co., Inc.*, 10 B.R. at 1002; *In re Colocotronis Tanker Securities Litigation*, 449 F.Supp. 828, 830 (S.D.N.Y. 1978); *Quintel Corp. N.V. v. Citibank, N.A.*, 567 F.Supp. 1357, 1364 (S.D.N.Y. 1983). The justification for this conclusion has been explained as follows:

But it will often happen that the two original clients will fall out among themselves and become engaged in a controversy in which the communications at their joint consultation with the lawyer may be vitally material. In such a controversy it is clear that the privilege is inapplicable. In the first place the policy of encouraging disclosure by holding out the promise of protection seems inapposite, since as between themselves neither would know whether he would be more helpful or handicapped, if in any dispute between them, both could invoke the shield of secrecy. And second, it is said that they had obviously no intention of keeping these secrets from each other, and hence as between themselves it was not intended to be confidential.

McCormick, at 190. The debtor and Larson and Somerset may have had a common interest when the communications were made. However, it is readily apparent that the interests of the trustee and the interests of Larson and Somerset are now adverse. The joint defense privilege does not bar discovery of the category two entries.

The motion to quash is denied.

An appropriate order is to be submitted for entry.