409 A.2d 1358

**ESTATE OF Martin C. KOFSKY, Deceased.**

**Appeal of Stephen KOFSKY.**

Supreme Court of Pennsylvania.

Argued Oct. 12, 1979.

Decided Dec. 21, 1979.

Reargument Denied Feb. 6, 1980.

474

Morris Paul Baran, Philadelphia, for appellant.

Louis Lipschitz, Joseph R. Danella, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

Martin Kofsky died on March 8, 1974 and, by a will dated May 27, 1969, left his entire estate to his brother. The decedent's son, appellant Stephen Kofsky, filed a claim against his father's estate alleging that in the fall of 1969,

he entered into an oral contract with decedent wherein the decedent agreed to bequeath $150,000 to appellant if appellant would attend and graduate from dental school. Appellant graduated from the University of Pennsylvania School of Dental Medicine in June of 1973.

A hearing was held on the matter and appellant's claim was denied. Appellant filed exceptions to the adjudication. These exceptions were dismissed by the court en banc, and appellant brought this direct appeal. Appellant contends that the chancellor erred in ruling that the manner in which he was cross-examined by the estate did not waive the "Dead Man's Act". We agree.

The "Dead Man's Act", Act of July 9, 1976, P.L. 586, No. 142, § 2, *as amended,* 42 Pa.C.S.A. § 5930, provides an exception to the general rule of competency and disqualifies surviving parties to a transaction or event who have an interest adverse to the decedent from testifying as to matters which occurred prior to the decedent's death. *Matthew's Estate,* 431 Pa. 616, 246 A.2d 412 (1968). The purpose of the Act is "to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute". *Weaver v. Welsh,* 325 Pa. 571, 576–77, 191 A. 3, 7 (1937). The Act accomplishes this purpose and aids the estate by making the witness incompetent to testify to such matters; not by making the testimony itself incompetent. *Balla v. Sladek,* 381 Pa. 85, 112 A.2d 156 (1955).

However, there is an exception; when a claimant against the estate of a decedent testifies in his own behalf as to facts occurring since the death of the decedent and is cross-examined as to matters occurring during the decedent's lifetime, the disability imposed by the Act is lifted, and the claimant becomes competent to testify to all relevant and material matters. *Clad's Estate,* 214 Pa. 141, 144, 63 A. 542, 543 (1906); *Gerlach's Estate,* 364 Pa. 207, 72 A.2d

271 (1950). This result obtains because a cross-examining party may not remove the disability solely for his own purposes, and also, because the cross-examiner, in exceeding the legal limits placed on the witness' testimony for the cross-examiner's benefit, "makes the witness his own, and accredits him just as though he had called him in chief in the first instance, without qualification or restriction". *Goehring's Estate,* 263 Pa. 47, 53, 106 A. 60, 62 (1919).

In the instant case, appellant testified in his own behalf as to family relationships and the events *subsequent* to his father's death. In the course of the direct examination, the following transpired:

BY MR. BARAN [appellant's counsel]:

Q  Will you tell the Court the nature of the conversations that you had?

.        .        .        .        .

A  The conversations concerned the death of my father— how the death came about and what had happened that day. How he went into the hospital and subsequently died.

My uncle [the decedent's brother, personal representative, and sole beneficiary] also told me at that time that my father loved me intensely and everything in his life revolved around me.

MR. LIPSCHITZ [counsel for the estate]: I move that the conversation just stated about what his uncle told him be stricken, if your Honor please.

.        .        .        .        .

I believe that this is testimony contrary to the Dead Man's Statute, which restricts the testimony of a claimant in an estate.

.        .        .        .        .

THE COURT: Your objection is noted. And that particular objection I won't rule on. I will take the testimony subject to your objection. And I will rule on the objection in my adjudication.

MR. LIPSCHITZ: May I suggest to your Honor that if your Honor is going to defer the ruling until your Honor's adjudication it will prevent us—we won't know just whether or not we are required to go forward and dispute this kind of testimony—which I submit is inadmissible. Your Honor will not permit us then—I assume—after you have made a ruling—to reopen the case?

And the other issue will arise as to whether cross-examination will make this kind of testimony admissible? THE COURT: No. We can permit cross-examination subject to my ruling. If I rule—I will take the cross-examination with the understanding that *if I should determine the testimony to be admissible, then the cross-examination is as is.* If I determine the testimony to be inadmissible, then the cross-examination because of that will not make it admissible because the cross-examination was taken subject to that. Notes of Testimony, pp. 15–19. (Emphasis supplied)

On cross-examination, counsel for the estate elicited testimony from appellant concerning, *inter alia* : the decedent's health; when and how often appellant conversed with the decedent over the telephone; where appellant resided at the time of these conversations and the telephone numbers of the phones used; how appellant was employed before his father's death; when and how often appellant and decedent visited each other; whether the decedent stayed with appellant on the occasions that he visited him; when appellant's parents were divorced; how long appellant lived with his mother after the divorce; and whether appellant, when he was an adolescent, had testified against his father in an action to enforce a support order. On redirect, appellant's counsel inquired into what occurred during the visits and the text of the conversations mentioned on cross-examination. Counsel for the estate objected, citing the Dead Man's Act. Appellant's counsel argued that the estate had waived this objection by inquiring into these matters on cross-examination and called the chancellor's attention to this Court's holdings in *Clad's Estate, supra; Goehring's Estate, supra;*

and *Gerlach's Estate, supra.* The chancellor, nevertheless, sustained the objection and held that the estate had not waived the protection of the Dead Man's Act. This was error.

Appellee asserts that the cross-examination did not waive the Dead Man's Act because it explored only those matters occurring during the decedent's life that had been testified to on direct examination over appellee's objections. This is incorrect. Appellant did not, on direct examination, testify to "any matter occurring before the death" of his father. In fact, the portion of appellant's direct examination which the estate found to be objectionable under the Dead Man's Act (see *supra*) was a statement made by the estate's own representative after the decedent's death. The estate was certainly in as good a position as the decedent would have been to refute this testimony, and it did not, therefore, violate the Dead Man's Act. *Weaver v. Welsh, supra; Wade's Estate,* 251 Pa.Super. 269, 380 A.2d 482 (1977).

Moreover, it is clear that the estate, on cross-examination, inquired into many "matter[s] occurring before the death" of the decedent. For "matter", as that term is used in the Act, does not, as the estate now argues, refer only to the transaction at issue; it refers to anything occurring before the decedent's death which has any bearing on the transaction.[1] *Hendrickson's Estate,* 388 Pa. 39, 130 A.2d 143 (1957). Consequently, the estate's cross-examination of appellant constituted a waiver of the Dead Man's Act and made him a competent witness as to all relevant and material matter. *Clad's Estate, supra; Gerlach's Estate, supra.* The chancellor, therefore, erred in preventing appellant from testifying on redirect examination as to matters which occurred during his father's lifetime.[2]

1. The closeness of the relationship between decedent and appellant and the frequency of their communications and visits have obvious bearing on the issue of whether or not the decedent would offer to leave appellant a large sum of money in exchange for his attending dental school.

2. Appellee argues that the chancellor's statement (quoted in full *supra*) to the effect that the cross-examination would be taken

Appellant also contends that the chancellor erred in permitting his former attorney to testify to the privileged oral and written communications between them. While our disposition of the previous contention makes it unnecessary to reach this issue, we nevertheless deem it advisable to address the question in order to prevent a repetition of the error on remand.

The estate called Manuel Sidkoff, the first attorney appellant consulted regarding the instant matter, as a witness, and appellant requested an offer of proof. Counsel for the estate then made the following offer:

MR. LIPSCHITZ: If your Honor please, I am prepared to prove by Mr. Sidkoff that he represented Stephen Kofsky. *That Stephen Kofsky consulted Mr. Sidkoff. That Mr. Steve Kofsky, during the representation by Mr. Sidkoff, never mentioned to him the fact that he had a claim based on a contract in which he wanted $150,000.00 as outlined by his counsel here in this courtroom.* That Mr. Sidkoff continued to represent Mr. Kofsky from sometime early in April until sometime in the latter part of April, 1974. That during that representation Mr. Sidkoff had a discussion with Mr. Rubin, who represented the estate. That in that discussion with Mr. Rubin, Mr. Sidkoff never presented any claim such as is being presented here. *Also there was some correspondence between* —I believe between *Mr. Sidkoff and perhaps the claimant* here, which is inconsistent with the position which he has assumed. Notes of Testimony p. 487. (Emphasis supplied)

subject to appellee's Dead Man's Act objection authorized the inquiries on cross-examination, and that no waiver of the Dead Man's Act could, therefore, occur. While we realize that the chancellor's failure to promptly rule on appellee's objection was not conducive to the orderly presentation of evidence and may have created unnecessary confusion, the chancellor's statement does not have the meaning, nor could it have the effect, appellee seeks to attribute to it. The first part of that statement, which deals with what will occur if appellee's objection is found to be improper, quite plainly states that the cross-examination will be taken "as is" and not given any special consideration on account of appellee having wrongly interposed an objection.

Appellant objected to this testimony on the basis of the attorney-client privilege. The chancellor declined to rule on the objection, and stated that the testimony would be taken subject to appellant's objection and ruled upon in the court's adjudication. Mr. Sidkoff then proceeded to testify to the content of his conversations with appellant, and the notes he took during these interviews along with several pieces of correspondence received from appellant were offered into evidence by the estate. Appellant objected again, and the chancellor did not admit the documents into evidence but, as with the testimony, made them a part of the record and delayed ruling on their admissibility until the adjudication. In the adjudication, the chancellor ruled that the conversations between Mr. Sidkoff and appellant were, as the offer of proof so plainly indicated, protected by the attorney-client privilege and stated that this evidence would "not be considered in determining the merits of this case." [3]

This delayed disposition of appellant's attorney-client privilege objection was entirely improper as it failed to take into account the policies and purposes served by the attorney-client privilege. The common law privilege for communications between attorney and client, the oldest of the common law privileges for confidential communications, is codified by the Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 5928, which provides:

3. The court en banc, in dismissing appellant's exceptions to the adjudication, agreed that the admission of this testimony was error, but found it to be harmless. That court reasoned that Mr. Sidkoff's testimony to the effect that *appellant did not mention a contract claim* to him was cumulative to the testimony of an attorney for the estate, Mr. Rubin, who testified that *Mr. Sidkoff did not present a contract claim.*

As discussed above, this approach fails to take into consideration the purpose of the attorney-client privilege. Furthermore, the testimony of the two witnesses is not necessarily cumulative. The record discloses that Mr. Sidkoff represented appellant for a very short period of time and that his contacts with counsel for the estate were limited to two or three telephone conversations, none of which exceeded five minutes. Under such circumstances, the inferences raised by the mere fact that Mr. Sidkoff did not present a contract claim are not identical, either in substance or weight, to the inferences raised by Mr. Sidkoff's testimony to the effect that appellant never mentioned the contract in the entire course of their conferences.

In a civil matter *counsel shall not be* competent or *permitted to testify to confidential communications* made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client. (emphasis supplied)

This language makes it clear that the statute proscribes not only giving evidentiary consideration to confidential communications, but also their very disclosure. This results from the fact that the privilege is not concerned with prejudice, the better ascertainment of the truth, or the reliability of attorney-client communications. 8 Wigmore, Evidence, § 2196; J. McCormick, Evidence, §§ 72 and 92 (2d Ed. 1972). Rather, the privilege is grounded in a policy entirely extrinsic to protection of the fact-finding process; its purpose is to foster a confidence between client and advocate that will lead to a trusting and open attorney-client dialogue.[4] *In re Westinghouse Elec. Corp. Uranium Contracts,* 76 F.R.D. 47 (W.D.Pa.1977); *Alexander v. Queen,* 253 Pa. 195, 97 A. 1063 (1916). As a consequence, the damage to the administration of justice occurs when the sanctity of the confidence is improvidently violated, not when the evidence is given substantive consideration.

The appellee in the instant case had the burden of setting forth in its offer of proof facts from which the chancellor could conclude that the proffered testimony would not violate the attorney-client privilege. *Nadler v. Warner Co.,* 321 Pa. 139, 184 A. 3 (1936); 2 Henry, Pa. Evidence, § 693 (4th Ed. 1953). Appellee not only failed to carry this burden but, in fact, stated facts which made it

4. As stated in the Comment to Rule 210 of the A.L.I. Model Code of Evidence:

In a society as complicated in structure as ours and governed by laws as complex and detailed as those imposed upon us, expert legal advice is essential. To the furnishing of such advice the fullest freedom and honesty of communication of pertinent facts is a prerequisite. To induce clients to make such communications, the privilege to prevent their later disclosure is said by courts and commentators to be a necessity. The social good derived from the proper performance of the functions of lawyers acting for their clients is believed to outweigh the harm that may come from the suppression of the evidence in specific cases.

*apparent* that Mr. Sidkoff's testimony would be in direct violation of the privilege. Such being the case, it was clearly error for the chancellor to delay ruling on appellant's timely objection, and to lay open to the public those matters which appellant had made known to his attorney in private and strict confidence.

The order of the court below is reversed, and the case is remanded for a new hearing on appellant's claim.

MANDERINO, J., did not participate in the consideration or decision of this case.

ROBERTS, J., concurs in the result, believing that on this record appellant is entitled to testify as to the events occurring before his father's death.

NIX, J., concurs in the result.