641 A.2d 1

Cynthia M. MALESKI, Insurance Commissioner of the
Commonwealth of Pennsylvania, By Her Deputy,
Ronald E. CHRONISTER, Plaintiff,

v.

CORPORATE LIFE INSURANCE COMPANY, Defendant.

Commonwealth Court of Pennsylvania.

Argued Feb. 23, 1994.

Decided March 9, 1994.

Publication Ordered April 11, 1994.

38

Jerome J. Shestack, Zachary L. Grayson and Linda J. Wells, for plaintiff.

Peter J. Tucci, Michael L. Browne, Denise Pallante and Richard A. Sprague, for defendant.

James D. Golkow, Patrick J. O'Connor, Gerianne Hannibal and Douglas B. Lang, for intervenor, Berry & Martin.

PELLEGRINI, Judge.

Frederic S. Richardson, Theodore D. Nering and the law firm of Berry & Martin (collectively, Petitioners), former counsel to Corporate Life Insurance Company (Corporate Life) move for reconsideration of this Court's order of February 18, 1994, directing Berry & Martin to turn over to Wolf, Block, Schorr and Solis–Cohen (Wolf, Block), special counsel to the Insurance Commissioner (Statutory Liquidator), nineteen sealed boxes of documents from files relating to its representation of Corporate Life, claimed to be either privileged or protected as attorney work-product.

On February 18, 1994, following a determination that the corporation was insolvent within the meaning found in the Insurance Department Act (Act),[1] this Court ordered that Corporate Life, a Pennsylvania stock life insurance company,

1. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. § 221.14.

be dissolved and liquidated. In addition to the Order of Liquidation, this Court also directed that all files pertaining to Corporate Life be turned over to Wolf, Block, acting on behalf of the Statutory Liquidator. After Wolf, Block determined that Berry & Martin had served as legal counsel to Corporate Life, representatives of Wolf, Block demanded that all Berry & Martin files pertaining to the Corporation be turned over. In compliance with this Court's order, Berry & Martin turned over all Corporate Life files in its possession, but sealing nineteen boxes of documents, asserting immunity under the attorney-client privilege on behalf of both Corporate Life and its former directors and officers, as well as the work-product doctrine on its own behalf. Petitioners then filed these motions for reconsideration of the February 18, 1994, order, essentially seeking a protective order regarding the contents of the nineteen sealed boxes.

Petitioners contend that the nineteen sealed boxes contain three types of documents immune from disclosure:

1) Documents in which Corporate Life can claim attorney-client privilege.

2) Documents in which former directors and officers of Corporate Life can claim a privilege separate from that of the corporation.

3) Documents constituting the work-product of Berry & Martin which should not be disclosed because of the proprietary interest the firm holds in them.

The Statutory Liquidator contends that because it now stands as the management of Corporate Life, it may waive any attorney-client privilege which the corporation might hold. It also contends that the former directors and officers of Corporate Life cannot assert the attorney-client privilege with regard to communications made in their role as corporate officers. Finally, it contends that the Pennsylvania law does not recognize the work-product doctrine outside pre-trial discovery or grand jury proceedings.

## I.

The initial issue presented is whether the Statutory Liquidator of Corporate Life has the power to waive any attorney-client privilege Corporate Life may have as to pre-liquidation communications. In statute, common law, and the Rules of Professional Conduct governing attorneys, Pennsylvania has recognized that confidential communications from a client to an attorney are immune from disclosure. See, e.g., 42 Pa.C.S. §§ 5916, 5928; Pennsylvania Rules of Professional Conduct Rule 1.6; and *Estate of Kofsky*, 487 Pa. 473, 409 A.2d 1358 (1979). This privilege attaches to communications made by corporate as well as individual clients. *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). A corporation, as an inanimate entity, can only act with respect to the privilege through those authorized to act on its behalf. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985). Under the Pennsylvania Corporation Law, the authority to act on behalf of a corporation is vested in the directors and officers.[2] This authority passes with the succession of management. Displaced managers may not assert corporate privilege over the wishes of current managers, even as to statements former managers might have made to counsel concerning matters within the scope of their corporate duties. *Id.* at 349, 105 S.Ct. at 1991. In *Weintraub*, the United States Supreme Court addressed the issue of whether the bankruptcy trustee held the power to waive a corporation's attorney-client privilege to the same extent as successive management.

*Weintraub* involved a corporation which had filed a petition for liquidation under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 761–766. The trustee appointed to liquidate the corporation sought to waive the attorney-client privilege with respect to confidential pre-bankruptcy communications. In addressing whether the power to waive the privilege passed to the trustee as it would have to successive management had the corporation remained solvent, the Court examined the role of the trustee in liquidating the corporation. *Weintraub, supra*

**2.** 15 Pa.C.S. § 1721.

at 351–352, 105 S.Ct. at 1992. The Court determined that, even though their ultimate goals differed, the powers and duties of the trustee in maximizing the estate of the corporation were analogous to those held by a solvent corporate management, even to the extent of conducting business operation if necessary. *Id.* at 352, 105 S.Ct. at 1993. In addition, based upon the trustee's duty to seek recovery on behalf of the corporation from former directors and officers, the Court concluded that the power to waive the attorney-client privilege with respect to pre-bankruptcy communications properly rested with the trustee as the management successor to the pre-bankruptcy directors and officers. *Id.* at 353, 105 S.Ct. at 353.

Petitioners correctly point out that *Weintraub* was decided on the basis of the powers of a liquidating trustee in bankruptcy, and argue that the dissolution of the corporation here distinguishes that case. *Weintraub* established a functional test to determine what successors were entitled to waive the privilege; when a successor manages the affairs of a corporation, even if merely winding up its affairs, the right to assert the privilege devolves to the successor. Consistent with that holding, the right to waive the privilege has not been limited to matters arising under the Bankruptcy Code and has even been applied to corporations that have been dissolved by orders of liquidation where there is broad-based power of the liquidator to continue to engage in management-type activity. See, *Federal Deposit Insurance Corporation v. Cherry, Bekaert & Holland,* 129 F.R.D. 188 (M.D.Fla.1989); *Federal Deposit Insurance Corporation v. Berry,* Civ. No. 1–85–62 (E.D.Tenn., June 10, 1985) and *Federal Deposit Insurance Corporation v. Ellis,* Civ. No. CD–84–PT–2560–M (M.D.Ala., Dec. 23, 1985); but see, *Federal Deposit Insurance Corporation v. McAtee,* 124 F.R.D. 662 (D.Kan.1988) (holding *Weintraub* rational inapplicable to liquidations because corporation ceases to exist after liquidation order); and *Federal Deposit Insurance Corporation v. Amundson,* 682 F.Supp. 981 (D.Minn.1988) (holding *Weintraub* not controlling once a corporation is dissolved). In *Cherry, Berry* and *Ellis,* where the FDIC acted in a liquidation role after the dissolution of the

corporation, the courts held *Weintraub* to be controlling based upon the "winding up" function of the liquidator where the affairs of the dissolved entity continued to be managed for liquidation purposes despite the dissolution. Conversely, *Amundson* and *McAtee* dealt with situations where the FDIC acted in its corporate capacity, solely as the purchaser of a defunct corporation's assets, in which there was no authority for the FDIC to engage in management type functions. See *Texas American Bankshares, Inc. v. Clarke,* 954 F.2d 329 (5th Cir.1992) (liquidation involves a continuation of the management of corporate affairs for the purposes of estate maximization while corporate purchasing does not).

Under the Act, the Statutory Liquidator, performs functions similar to the trustee in liquidations under the Bankruptcy Code. In effecting a liquidation, the Statutory Liquidator has the power:

· To collect debts and monies due the insurer and to do such other acts as are necessary or expedient to collect, conserve or protect the assets or property of the insurer.

· To sell the property of the insurer and use the assets of the estate to transfer policy obligations to other insurers.

· To acquire, encumber, lease, improve, sell, or otherwise deal with any property of the insurer and otherwise engage in any transaction in connection with the liquidation.

· To borrow money and enter into contracts on behalf of the insurer, as well as to make bank deposits and invest monies.

· To initiate and defend lawsuits, including instituting suits against former officers and directors of the insurer.

See, 40 P.S. § 221.21. In addition, the Statutory Liquidator has the right to do "such other acts, ... as may be necessary or expedient for the accomplishment of or in aid of the purpose of liquidation." 40 P.S. § 221.23(23).

As was the case with the bankruptcy trustee in *Weintraub,* and the FDIC in *Cherry, Berry* and *Ellis,* the Statutory Liquidator performs a function most analogous to that of the management of a corporation, continuing to wind up the affairs of Corporate Life after the dissolution of its corporate

existence. We feel that *Weintraub* functional analysis is properly employed here and its standards met by the Statutory Liquidator despite the dissolution of the corporation. Accordingly, as the management successor to the former directors and officers of Corporate Life, the Statutory Liquidator may waive any attorney-client privilege held by Corporate Life with respect to confidential pre-liquidation communications.

## II.

■ Petitioners next contend that the former directors and officers of Corporate Life hold a privilege separate and distinct from the corporation's privilege for communications made to corporate counsel seeking individual representation. While our state courts have not yet addressed this issue, both parties correctly point out that the federal courts have. The parties direct our attention to *In re: Beville, Bressler & Shulman Asset Management*, 805 F.2d 120 (3d Cir.1986). In *Beville*, the United States Court of Appeals for the Third Circuit held that while former officers and directors of a corporation may not claim privilege for communications made by them in their corporate capacities, they nonetheless may hold a privilege as to communications made by them in their individual capacities. *Id.* at 124–125. The court recognized that if an officer or director approached outside corporate counsel as an individual, seeking individual representation, the attorney-client privilege attaches to those communications and may be asserted by the officer or director. *Id.* The court held that in order to assert this privilege, the burden rests with the officers or directors to establish that the representation sought was in fact individual and approved a five-factor test to make this determination. Relying on the language used in *In re: Grand Jury Investigation, No. 83–30557*, 575 F.Supp. 777 (N.D.Ga.1983), the court held that the officer or director must show:

· That they approached counsel for the purpose of seeking legal advice.

· That when they approached counsel, they made it clear that they were seeking legal advice in their individual rather than corporate capacities.

· That counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise.

· That the conversations with counsel were confidential.

· That the substance of their communications with counsel did not contain matters within the company or the general affairs of the company.

*Beville* at 123 (citing *In re: Grand Jury Investigation* at 780).

This test recognizes the distinction between the corporation's privilege, and that of the officer or director seeking individual representation separate and apart from corporate matters. Further, we believe that this test insures protection of communications in which the officer or director holds a privilege, while fostering the estate maximization goal of liquidation under the Act. Accordingly, if the former officers and directors of Corporate Life can establish these five required showings as to communications in which they claim a privilege, such communications shall not be available to the Statutory Liquidator unless the former officers and directors choose to waive their privilege. The determination of whether the former officers and directors of Corporate Life hold an individual privilege in documents currently in the possession of the Department shall be made by this Court in accordance with the following order.

### III.

Finally, Petitioners contend that certain materials contained in the files confiscated by the Statutory Liquidator are work-product in which Berry & Martin has a proprietary interest and which are immune from disclosure under the work-product doctrine. The Statutory Liquidator contends that the only work-product doctrine recognized in Pennsylvania is that embodied in Pennsylvania Rules of Civil Procedure 4003.3 applicable only to discovery matters.

The work product doctrine was first set out by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), protecting the mental impressions, conclusions, notes, memoranda, theories, and research, from disclosure during discovery in actions governed by the Federal Rules of Civil Procedure. The federal courts have subsequently extended the scope of the doctrine to grand jury investigations, *In re: Grand Jury Proceedings*, 604 F.2d 798 (3d Cir.1979), as well as requests for information from federal agencies under the Freedom of Information Act.[3] *Federal Trade Commission v. Grolier*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983). However, the federal courts have held that the work-product doctrine does not apply to the situation in which a client seeks access to documents created by an attorney in the course of representation. *Spivey v. Zant*, 683 F.2d 881 (5th Cir.1982).

■ Pa.R.C.P. 4003.3 specifically adopts the doctrine as set out in *Hickman* for pretrial discovery matters in civil actions under the Rules. Our Supreme Court has likewise extended the applicability of the doctrine to pretrial criminal discovery, search warrants, and grand jury proceedings, *In re: Gartley*, 341 Pa.Superior Ct. 350, 491 A.2d 851 (1985), *affirmed sub nom., In re: Search Warrant B–21778*, 513 Pa. 429, 521 A.2d 422 (1987) (pursuant to Pa.R.Crim.P. 305G), and most recently, this Court has applied it to actions brought under the Right-to-Know Act.[4] *Nittany Printing and Publishing Co., Inc. v. Centre County Board of Commissioners*, 156 Pa.Commonwealth Ct. 404, 627 A.2d 301 (1993) (identifying privileged work-product as outside the scope of the statutory definition of public record). In each of these cases, the courts have relied upon the embodiment of the *Hickman* doctrine in a specific rule or statute governing the proceeding and no Pennsylvania court has ever recognized the doctrine in either common or statutory law outside these three areas. Since nothing in the Act incorporates the work-product doctrine into liquidation proceedings, and the Pennsylvania courts do not

3. 5 U.S.C. § 552 *et seq.*

4. Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. §§ 66.1–66.4.

recognize a common law work-product doctrine, none of the documents are immune from disclosure on that basis.

■ Nevertheless, Petitioners contend that Berry & Martin holds a proprietary interest in its work-product which should give it the right to refuse to disclose it to the Statutory Liquidator because the documents do not belong to Corporate Life. The same argument was made in a similar situation in *Resolution Trust Corporation v. H——, P.C.*, 128 F.R.D. 647 (N.D.Tex.1989). In *Resolution Trust,* the Resolution Trust Corporation (RTC), upon being named conservator of a defunct S & L, requested that the law firm that had previously represented the S & L turn over all its files relating to that representation. While the law firm did turn over part of the files, it refused to turn over attorney's notes and memoranda on the basis that such documents were "the personal property of the individual attorneys who drafted and prepared [the] documents." *Id.* at 648. The RTC sued to recover the entire contents of the files. In ordering the law firm to turn over the entire contents of the files, the court relied upon the language of DR 9–102(B)(4) which provides that a lawyer must "promptly ... deliver to the client as requested by a client ... properties in the possession of the lawyer which the client is entitled to receive." It reasoned that since the S & L in conservatorship paid for the creation of the contents of the files, the attorney's work-product contained in them was now the property of the RTC. *Id.* at 649, quoting *In re: Kaleidoscope, Inc.,* 15 B.R. 232 (Bankr.N.D.Ga.1981), *rev'd on other grounds,* 25 B.R. 729 (N.D.Ga.1982) ("an attorney ... has no right or ability to unilaterally cull or strip from the files created or amassed during his representation of that client documents which he determines the client is not entitled to see. The client is either entitled to all of the file or none of it").

■ We find this reasoning persuasive. Pennsylvania has substantially readopted former DR 9–102(B)(4) in Rule 1.15(b) of the Pennsylvania Rules of Professional Conduct. See Comment to Rule 1.15(b). Notes and memoranda are part of the

package of goods and services which a client purchases when they retain legal counsel. The client is entitled to the full benefit of that for which they pay. We therefore believe that once a client pays for the creation of a legal document, and it is placed in the client's file, it is the client, rather than the attorney who holds a proprietary interest in that document. When a client requests that its property held by an attorney be turned over, under Rule 1.15(b) the attorney must comply. Accordingly, Berry & Martin does not have the right to withhold any documents belonging to Corporate Life (and now the Department) on the basis of work-product.

An appropriate order will be entered.

## ORDER

AND NOW, this 9th day of March, 1994, it is ORDERED that:

1. Petitioners' Motion to Reconsider our order of February 18, 1994, that all Corporate Life legal files be turned over to the Insurance Commissioner as Statutory Liquidator, on the basis of any attorney-client or work-product privilege is denied.

2. Petitioners' Motion to Reconsider our order of February 18, 1994, directing them to turn over files in which former Corporate Life officers may claim a personal attorney-client privilege is granted.

3. To determine which documents in which a personal attorney-client privilege may exist, the parties are to:

a. By March 31, 1994, conduct an inventory of the documents. The inventory shall be conducted as follows: documents in possession of the Insurance Department will be inventoried by Petitioners' representatives at the office of Wolf, Block. Documents in the possession of Reed, Smith shall be inventoried at their offices. A representative of the Insurance Department is entitled to be present during the inventory. After each box is inventoried, it will be resealed until further order of the court.

b. By April 11, 1994, those asserting an attorney-client privilege will file with the court a petition identifying those documents it contends are privileged, documents it contends support their claim, and witnesses that they may call to support their claim.

c. The Statutory Liquidator will have until May 6, 1994, to take depositions of witnesses Petitioners' intend to call. Depositions are to be *limited* to the facts giving rise to the privilege. If the Statutory Liquidator desires to depose parties not named by Petitioners, it may request permission to do so from the court. The Statutory Liquidator will coordinate in advance the scheduling of the depositions with Petitioners. Petitioners and attorneys who are claiming privilege on their clients' behalf will make themselves available during this period for deposition. If they fail to do so without good excuse as determined by the court, they will be precluded from giving evidence in this matter. The Statutory Liquidator will notify the court of all depositions, including the date and time.

5. A hearing is scheduled for May 12, 1994, at 9:30 a.m. in Philadelphia, in a courtroom to be designated later. Parties in possession of sealed documents shall be responsible for their delivery to the court. If necessary, an inspection, *in camera*, will be held to determine which documents the attorney-client privilege attaches.

6. Berry and Martin's request to copy documents turned over to the Statutory Liquidator is held in abeyance pending inventory.