## Quantitative Financial Strategies Inc. v. Morgan Lewis & Bockius LLP

266

*James Crumlish,* for plaintiff.
*Mason Avrigian,* for defendant.

HERRON, *J.,* March 12, 2002—

# I. INTRODUCTION

The motion for issuance of a writ of seizure that has been filed in this case by Quantitative Financial Strategies raises the novel issue of whether a law firm may retain a copy of a client's file after turning the entire file over to the client. For the reasons set forth below, this court concludes that QFS is not entitled to the issuance of a writ of seizure for the law firm's copy of plaintiff's file.

# II. BACKGROUND

Plaintiff Quantitative Financial Strategies Inc. filed a complaint in replevin against its former law firm, Morgan, Lewis & Bockius, seeking an order for the seizure and return of all plaintiff's files, documents and things, including copies of its files and documents in whatever medium. It also filed a motion for issuance of a writ of seizure pursuant to Pa.R.C.P. 1075.1.

QFS alleges that on December 17, 2001, it received a copy of a "secret letter" [1] that Morgan sent to one of QFS's direct competitors. QFS attached a copy of this letter as exhibit "A," which explains, inter alia, the terms of Morgan's proferred legal representation and potential conflicts of interest. QFS characterizes this communication as "a knowing violation of the legal fiduciary and

---

1. QFS attached this letter to its complaint as exhibit "A." Morgan disputes this characterization of its correspondence as a "secret letter," describing it instead as an engagement letter pertaining to its representation of its new client. Answer, ¶4.

ethical duties defendant owes plaintiff."[2] Several days later on December 21, 2001,[3] QFS demanded Morgan to return all of its files and other documents. QFS now alleges that Morgan has refused to return its property or confirm that they have made no copies of it.[4]

Morgan, in response, denies that it refused to return its former clients' files and documents. In its answer, Morgan states that QFS's president, Dr. Sanford Grossman, sent a letter to Francis Malone, the chairman of Morgan, in which he requested the return of the "complete files relating to your firm's representation of my wife and I." Dr. Grossman stated that he would make arrangements to pick up the documents "no later than 5 p.m. tomorrow, December 21, 2001." Answer, ¶11 and exhibit A.

According to the defendant law firm, Thomas Kittredge of Morgan responded to this request with a letter dated December 21, 2001. In that letter, Kittredge stated that he had requested Central Files to retrieve the files from storage in the warehouse, but that this could not be achieved by 5 p.m. He hoped that despite the Christmas holidays, the files would be available by the end of the week. Answer, ¶11 and exhibit C. On December 28, 2001, Mr. Kittredge sent a letter to QFS's attorney, James Crumlish, reaffirming that he had requested the files for the Grossmans and QFS and that he had been informed by the London office that the files had been

---

2. Complaint in replevin, ¶8. The substantive issue of Morgan's alleged breach of fiduciary duty is beyond the scope of this opinion.

3. Complaint in replevin, ¶¶12-13 and 16.

4. Complaint in replevin, ¶¶1-13.

forwarded. Mr. Kittredge also responded to the request that Morgan neither retain nor make copies of any documents and confirm that all relevant computer records had been deleted: he wrote that "we shall appreciate being advised as to the legal basis for such a request." Answer, ¶13, exhibit D (letter dated December 28, 2001).

By letter dated January 3, 2002, counsel for Morgan, Mason Avrigian, informed plaintiffs' attorney that the files and documents they had requested were available to be picked up at their offices. The letter then addressed the plaintiffs' request that the firm not retain any copies of these documents. Mr. Avrigian stated that Morgan would release the files, without retaining copies, conditioned on the receipt of the following:

"(1) A release executed by QFS, Dr. Grossman and Mrs. Grossman. A copy of the required release is attached.

"(2) An executed praecipe to mark the above-referenced action [the action in replevin] settled, discontinued and ended with prejudice." [5]

## III. LEGAL ANALYSIS

### A. *Motion for Writ of Seizure*

The procedure for the issuance of a prejudgment writ of seizure after notice and hearing is set forth in Pa.R.C.P. 1075.1. It provides that after a complaint has been filed,

---

5. Answer, exhibit E (1/3/2002 letter from Mason Avrigian). It is this court's recollection that Morgan abandoned these conditions prior to the hearing although the transcript does not reflect this.

the plaintiff may file a motion for issuance of a writ of seizure and the court will schedule a hearing:

"The hearing shall be held whether or not the defendant or other person found in possession of the property appears. If the court is satisfied that notice as provided by this rule has been given or a reasonable attempt to give notice has been made, it shall determine from the complaint, affidavits, testimony, admissions or other evidence, whether the plaintiff has established the probable validity of the claim, and, if so, it may order a writ of seizure to be issued upon the filing of a bond as provided by Rule 1075.3." Pa.R.C.P. 1075.1(e).

In deciding whether a writ of seizure should issue, "the court must determine from the complaint, affidavits, testimony, admissions or other evidence which may be received whether the plaintiff has established the probable validity of his or her claim." 4 Goodrich-Amram 2d section 1075.1(e):1 (1991). See also, *Hamilton Bank v. Seiger,* 22 D.&C.3d 534, 537 (Berks Cty. 1982).

The hearing that was held in response to plaintiff's motion for a writ of seizure was attended by counsel for both parties. Hence, the requirement for proper notice was met. At the hearing it was agreed that defendant Morgan has made the QFS file available to its former client but QFS refused to accept it unless Morgan's copy of the file is also delivered at the same time. The narrow issue before this court is therefore whether the former client, QFS, has a property interest in a copy of its file that would preclude Morgan from retaining this copy created at Morgan's expense.[6] The parties agreed that

---

6. See 1/15/2002 N.T. at 3. Morgan 1/28/2002 memorandum at 3 and exhibit A (file was copied at Morgan's expense).

this issue should be resolved on the briefs they would file after the hearing. 1/15/2002 N.T. at 3-4.

## B. *Standard for an Action in Replevin*

In an action in replevin, the issue is limited to "the question of title and the exclusive right of possession." *Blossom Products Corp. v National Underwear Co.,* 325 Pa. 383, 386, 191 A. 40, 41 (1937). See also, *International Electronics Co. v. N.S.T. Metal Products Co. Inc.,* 370 Pa. 213, 218, 88 A.2d 40, 43 (1952). Because an action in replevin focuses exclusively on title and right of possession, any other matters may not be considered as defenses or counterclaims. *Ford Motor Credit Co. v. Caiazzo,* 387 Pa. Super. 561, 566, 564 A.2d 931, 933 (1989). The primary relief sought in an action of replevin is "the return of the property itself." *Valley Gypsum Co. Inc. v. Pennsylvania State Police,* 135 Pa. Commw. 548, 553, 581 A.2d 707, 710 (1990).

The burden of proof in an action of replevin lies initially upon the plaintiff. As the Superior Court has observed in *Gensbigler v. Shawley,* 162 Pa. Super. 642, 643, 60 A.2d 360, 361 (1948), the "plaintiff has the burden of establishing by adequate proof such an interest in the property replevied as entitles him to exclusive possession." Consequently, "in a replevin action, the plaintiff must establish his right to possession by a preponderance of the evidence, whereupon the burden shifts to the defendant to prove his right to retain possession." *Petition of Allstate Insurance Co.,* 289 Pa. Super. 329, 333, 433 A.2d 91, 93 (1981). See also, *Johnson v. Staples,* 135 Pa. Super. 274, 280, 5 A.2d 433, 436 (1939). See

*Austin v. Borough of Ligonier,* 122 Pa. Commw. 161, 551 A.2d 403 (1988) (Where borough had a presumption of ownership of painting due to its 17 years of possession, the burden of going forward to rebut this presumption shifted to the defendant).

The narrow issue before this court, therefore, is whether plaintiff has a probable likelihood of proving an interest in copies of its files maintained by Morgan that would entitle QFS to exclusive possession of those copies. QFS has defined the property at issue as "any and all documents, *and any and all copies of those documents in whatever medium,* in the possession of Morgan, which relate to its legal representation of QFS." QFS 1/22/2002 memorandum at 5. (emphasis added) It specifically excludes documents that relate solely to Morgan's business such as internal billing and accounting records or references to other clients. *Id.* at 5 n.5.

Unfortunately, neither this court nor the parties were able to unearth precedent directly on point. Plaintiff relies heavily on *Maleski v. Corporate Life Insurance Co.,* 163 Pa. Commw. 36, 641 A.2d 1 (1994), and the dictates of Pa.R.P.C. 1.15(b) for its claim of a property interest in the copies of its files. *Maleski,* however, is not dispositive as to plaintiff's claims for several reasons. First, its procedural context is inapposite; second, it relies on a case, *Resolution Trust, infra,* which suggests that attorneys may maintain copies of client files despite the client's possessory interest in those files; and *Maleski* does not focus at all on the precise issue of possessory interests in copies of client files.

*Maleski* was not cast, like the QFS action, as an action in replevin with the necessary sharp focus on property

interest.[7] Instead, *Maleski* analyzed a law firm's proprietary interest in a client's files from the perspective of the rules of discovery, the work product doctrine[8] and Pa.R.P.C. 1.15(b). In analyzing more specifically whether the law firm held a "proprietary interest in its work-product" which would support a refusal of disclosure, the *Maleski* court noted that this issue had also been addressed in *Resolution Trust Corporation v. H_ _ _ _ P.C.,* 128 F.R.D. 647 (N.D. Tex. 1989). In finding the reasoning of *Resolution Trust* "persuasive" in the context of Pa.R.P.C. 1.15(b), the *Maleski* court concluded:

"Notes and memoranda are part of the package of goods and services which a client purchases when they retain legal counsel. The client is entitled to the full benefit of that for which they pay. We therefore believe that once a client pays for the creation of a legal document, and it is placed in the client's file, it is the client, rather

---

7. The *Maleski* court initially had to grapple with the complex issue of whether a stock life insurance company's law firm was required to turn its records over to the law firm that represented the Statutory Liquidator after the life insurance company was dissolved and liquidated. This issue led inexorably into an analysis of whether the Statutory Liquidator could waive any attorney-client privilege that might preclude this transfer of records. *Maleski,* 163 Pa. Commw. at 40, 641 A.2d at 2-3.

8. It concluded that none of the documents were immune to disclosure under the work product doctrine. It noted that federal courts have concluded that the work product doctrine may be invoked during discovery, grand jury investigations and Freedom of Information Act requests but not against a client who seeks access to his own file. These principles have likewise been embraced by Pennsylvania procedural rules and appellate precedent. *Maleski,* 163 Pa. Commw. at 44-45, 641 A.2d at 5.

than the attorney who holds a proprietary interest in that document. When a client requests that its property held by an attorney be turned over, under Rule 1.15(b) the attorney must comply." *Maleski,* 163 Pa. Commw. at 46-47, 641 A.2d at 6.

This conclusion that an attorney must turn over a client's file upon his request and that the client has a proprietary interest in his file is not explicitly compelled by Pa.R.P.C. 1.15(b) which merely provides that "a lawyer shall *promptly deliver to the client* or third person any funds or other *property that the client or third person is entitled to receive,* and upon request by the client or third person, shall promptly render a full accounting regarding such property." (emphasis added) The rule does not, for instance, define what property the client is entitled to receive. Similarly, another Rule of Professional Conduct relevant to this case in which a legal representation has been terminated, Pa.R.P.C. 1.16(d), emphasizes the requirement for an attorney to turn over property "to which the client is entitled" while providing that the attorney may retain "papers relating to the client to the extent permitted by other law":

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable, to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. *The lawyer may retain papers relating to the client to the extent permitted by law."* Pa.R.P.C. 1.16(d).

This reference to other law in the relevant rules explains the *Maleski* court's need to consider precedent from other jurisdictions. The cases from other jurisdictions requiring an attorney to turn over a client's file upon his request are legion.[9] Moreover, numerous courts have concluded that as between an attorney and a client, the file belongs to the client.[10] There is, however, some varia-

---

9. See *e.g.,* Arizona: *In re Struthers,* 179 Ariz. 216, 877 P.2d 789, 797-98 (1994) (attorney violated ethical rules in refusing to give client and her new counsel access to her files); *In re Van Baalen,* 123 Ariz. 82, 597 P.2d 985 (1979) (attorney engaged in unprofessional and unethical conduct in conditioning access to client's file upon payment of a copying fee). California: *Kallen v. Delug,* 157 Cal. App. 3d 940, 950, 203 Cal. Rptr. 879, 885 (Cal. Ct. App. 1984) (it is a breach of the Rules of Ethics for attorney to retain a client's files after discharge and request for those files); *Academy of California Optometrists Inc. v. Superior Court,* 51 Cal. App. 3d 999, 1006, 124 Cal. Rptr. 668, 672 (Cal. Ct. App. 1975) (attorney may not retain client files by asserting contractual retaining lien to extort fees); *In re Ramirez v. Fuselier,* 183 B.R. 583, 587 (Bank. 9th Cir. 1995) (under California law, an attorney is required to turn over a client's file promptly upon his request). Indiana: *McKim v. Indiana,* 528 N.E.2d 484 (Ind. Ct. App. 1988) (in light of professional rules of conduct, court has no discretion but to grant motion to compel attorney to turn over to his client all documents obtained pertaining to that representation). Minnesota: *In re Admonition XY,* 529 N.W.2d 688, 690 (Minn. 1995) (file belonged to client and was properly returned to her upon her request). Tennessee: *Crawford v. Logan,* 656 S.W.2d 360 (Tenn. 1983) (attorney violated disciplinary rule in failing to turn over tape to client involved in divorce action with husband).

10. Georgia: *Matter of Kaleidoscope Inc. v. Powell, Goldstein, Frazer & Murphy,* 15 B.R. 232, 241 (Bankr. N.D. Ga. 1981), *rev'd for lack of jurisdiction by, In the Matter of Kaleidoscope Inc. v. Powell, Goldstein, Frazer & Murphy,* 25 B.R. 729 (N.D. Ga. 1982) (in replevin action, title to original files amassed during an attorney's representation belongs to the legal successor to client based on agent/principal analysis). Minnesota: *In re Admonition XY,* 529 N.W.2d 688,

tion among this precedent as to the scope of a client's access to the file. The majority view as set forth in *Resolution Trust* and *Maleski* is that a client should have access to the entire file,[11] while other courts such as *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn,* 91 N.Y.2d 30, 689 N.E.2d 879, 666 N.Y.S.2d 985 (1997), have adopted this majority position with exceptions for documents that might violate a duty of nondisclosure to third parties or for documents intended for internal "law office review and use."[12] Other courts in examining the

690 (Minn. 1995) (file "belonged" to client). New Hampshire: *Averill v. Cox,* 145 N.H. 328, 761 A.2d 1083, 1092 (2000) (file is owned by the client). New York: *Matter of Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn LLP,* 91 N.Y.2d 30, 36, 689 N.E.2d 879, 882, 666 N.Y.S.2d 985, 988 (1997) (noting that "courts also have refused to recognize a property right of the attorney in the file superior to that of the client"); *Bronx Jewish Boys v. Uniglobe,* 166 Misc. 2d 347, 633 N.Y.S.2d 711, 713 (N.Y. Sup. Ct. 1995) (files belong to client). Texas: *Resolution Trust Corp. v. H_ _ _ _ P.C.,* 128 F.R.D. 647 (N.D. Tex. 1989) (entire contents of a file belong to the client).

11. See *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn,* 91 N.Y.2d 30, 34, 689 N.E.2d 879, 881, 666 N.Y.S.2d 985, 987 (1997) (describing the majority and minority views). For a discussion of the various views as to the ownership of documents within a client's file, see Slovut, "Eliminating Conflict at the Termination of the Attorney-Client Relationship: A Proposed Standard Governing Property Rights in the Client's File," 76 Minn. L.Rev. 1483 (1992).

12. *Sage Realty Corp.,* 91 N.Y.2d at 37-38, 689 N.E.2d at 883, 666 N.Y.S.2d at 989. Some examples of documents that would fall within this exception include an attorney's assessment of the client, or preliminary impressions of the issues presented by the case. The rationale for limiting access to such documents is their limited value to the client or successor attorney as well as recognition of "the need for lawyers to be able to set down their thoughts privately" to assure effective representation. *Id.* See generally, Connors, "1997-98 Survey of New York Law: Professional Responsibility," 49 Syracuse L.Rev. 679, 693 (1999) (noting that *Sage Realty* "carved out an important exception for documents intended for internal law office review").

ownership of a client's file have distinguished between those products owned by the client (the "end product") and those owned by the attorney (the "work product"). *Federal Land Bank of Jackson in Receivership v. Federal Intermediate Credit Bank of Jackson,* 127 F.R.D. 473, 478-80 (S.D. Miss. 1989), *rev'd on other grounds, (i.e.* retaining lien). *Federal Land Bank of Jackson v. Federal Intermediate Credit Bank of Jackson,* 128 F.R.D. 182 (S.D. Miss. 1989). Finally, one court has distinguished ethical requirements from property interests to conclude that the client does not possess an ownership interest in his file but "a right of access to the information in the documents" which "is not property in the traditional sense." *Corrigan v. Armstrong Teasdale, Schlafly, Davis & Dicus,* 824 S.W.2d 92, 95 (Mo. Ct. App. 1992).[13] As the *Corrigan* court observed:

"This protection of the client's interests, however, is satisfied simply by imposing a duty upon the attorney to surrender copies of those papers containing information needed by the client to protect his interests. This duty is created by the ethical imperatives of the practice of law, and it may even have a counterpart in a legal duty. But, the client's correlative right to the attorney's performance of his ethical duty need not be and is not a property right." [14] *Corrigan,* 824 S.W.2d at 98.

13. See also, Allen, "Ownership of Lawyer's Files About Client Representations: Who Gets the 'Original'? Who Pays for the 'Copies?,' " 79 Mich. B.J. 1062 (August 2000) (describing Formal Ethics Opinion R-19 (8/14/2000) of the State Bar of Michigan Bd. of Commissioners as concluding that file belongs to the lawyer, with the client entitled to access to the file).

14. *Corrigan,* 824 S.W.2d at 98. In *Corrigan,* the widow of the defendant law firm's client brought an action in replevin seeking delivery of the documents in his file.

Morgan, however, does not dispute that the original file should be returned to its former client, QFS. Instead, it argues for its right to maintain a copy of those files. Morgan 1/22/2002 memorandum at 8. Unfortunately, none of these previously cited cases focus on this narrow issue.

The sole Pennsylvania case cited by either party as dealing with access to a client's file, *Maleski v. Corporate Life Insurance Co.,* did discuss "proprietary interests" in general terms. It stated that "once a client pays for the creation of a legal document, and it is placed in the client's file, it is the client, rather than the attorney who holds a proprietary interest in that document." *Maleski,* 163 Pa. Commw. at 47, 641 A.2d at 6. This does not address the issue, however, of proprietary interests in copies of the file. Moreover, in reaching this conclusion, the *Maleski* court explicitly stated that it had found the reasoning of *Resolution Trust Corporation v. H_ _ _ _ P.C.,* persuasive.

In *Resolution Trust Corporation v. H_ _ _ _ P.C.,* 128 F.R.D. 647 (N.D. Tex. 1989), the Texas district court embraced the broad holding that the entire contents of files generated by a law firm in its representation of a client belong to the client. *Resolution Trust,* 128 F.R.D. at 647. Despite this broad holding that former attorneys may not withhold anything from the file, the court twice suggested that any materials that an attorney wished to keep "may be copied at its own expense." *Resolution Trust,* 128 F.R.D. at 648, 650.

It is in this context of who is responsible for paying for copying fees that the issue of copies of client files

typically emerges. When analyzing this issue, courts conclude either that the attorney must pay the copy fees for any documents he intends to keep from the client's file or that it is improper to condition access to the client file on the payment of copying fees by the client. *Averill v. Cox,* 145 N.H. 328, 761 A.2d 1083, 1092 (2000) (concluding that the client owns his file and the attorney is required "to bear the expense of retaining a copy"); *In re Admonition of XY,* 529 N.W.2d 688, 690 (Minn. 1995) (concluding that file was properly returned to client who owned it but that attorney improperly required client to pay for copying fees); *In re Van Baalen,* 123 Ariz. 82, 597 P.2d 985 (1979) (attorney improperly conditioned turning over file on client's payment of copying fees). See also, Ethics Advisory Op. 92-37 1993 WL 851331 S.Carolina Bar. Eth. Adv. Comm. (suggesting that when a lawyer is fired by his client, he must return any materials provided by the client but he may maintain a copy at his own expense).

Either approach suggests an implicit acceptance of an attorney's right to maintain copies of client files. In this vein, the Pennsylvania Bar Association Committee on Legal Ethics and Professional Responsibility in an informal opinion has advised "to the extent you [*i.e.,* an attorney] wish to retain any portion of the file, the associated duplicating expense should be treated by you as 'a cost of doing business' and should not be billed to the client." 1996 WL 935295, Pa. Bar. Assn. Comm. Leg. Eth. Prof. Resp. In. Op. no. 96-157 (11/20/96). See also, 1994 WL 928016 Pa. Bar Assn. Com. Leg. Eth. Prof. Resp. In. Op. no. 94-17 (2/16/94) (where client file is

copied by firm to protect itself from lawsuit, copying fees should be paid by attorney).

The Restatement (Third) of Law Governing Lawyers, section 46 (1998), also recognizes an attorney's implicit right to maintain copies of client files:

"Except under extraordinary circumstances—for example, when a client retained a lawyer to recover and destroy a confidential letter—a lawyer may keep copies of documents when furnished to a client." Restatement (Third) of Law Governing Lawyers, section 46 comment d.

Section 46 of the Restatement (Third) of Law Governing Lawyers has been characterized as embracing the majority view adopted by *Maleski* and *Resolution Trust* that clients should have full access to their files since section 46 provides that "[o]n request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation unless substantial grounds exist to refuse."[15] This suggests that the comment to section 46 stating that an attorney may keep copies of documents furnished by a client is compatible with the general reasoning in *Maleski* and other cases taking a similarly expansive view of a client's access to his file.

In fact, when the reasoning of cases that have adopted the view that a client should have full access to his file is examined, their rationales are consistent with a view that

---

15. Restatement (Third) of Law Governing Lawyers, section 46(2) (1998). The Restatement was characterized as essentially adopting this majority view by *Sage Realty Corp. v. Proskauer,* 91 N.Y.2d at 34, 689 N.E.2d at 881, 666 N.Y.S.2d at 987.

an attorney may keep copies of documents except under extraordinary circumstances. The most clearly stated rationale for allowing full access by clients to their files is perhaps found in *Sage Realty.* In *Sage Realty,* the court concluded that an expansive view of a client's access to his file is supported by an attorney's ethical obligations and fiduciary relationship with his client that require "openness and conscientious disclosure." *Sage Realty,* 91 N.Y.2d at 37, 689 N.E.2d at 882, 666 N.Y.S.2d at 988. This fiduciary relationship has, as a counterpart to full disclosure, an obligation to protect a client's confidences—an obligation that does not end with the termination of an attorney-client relationship. This obligation would thus afford protection to a client from any potential misuse of files retained by an attorney. See *e.g., Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 252, 602 A.2d 1277, 1283 (1992) (recognizing "the common-law foundation for the principle that an attorney's representation of a subsequent client whose interests are materially adverse to a former client in a matter substantially related to matters in which he represented the former client constitutes an impermissible conflict of interest actionable at law"); Pa.R.P.C. 1.6; 1.7; 1.9.

A second basis for the expansive view adopted by *Sage Realty* is its view that the more limited access embraced by the minority view "unfairly places the burden on the client to demonstrate a need for specific work product documents in the attorney's file on the represented matter." *Sage Realty,* 91 N.Y.2d at 36, 689 N.E.2d at 882, 666 N.Y.S.2d at 988. Allowing an attorney to keep copies of the files turned over to the client in no way im-

pacts on the client's ability to access any relevant documents within the complete files he has received.

Finally, the *Maleski* court interjects a pragmatic financial consideration in explaining its rationale for its finding of a client's proprietary interest in his file when it observes that "[n]otes and memoranda are part of the package of goods and services which a client *purchases* when they retain legal counsel." *Maleski,* 163 Pa. Commw. at 46-47, 641 A.2d at 6. (emphasis added) If an attorney copies a client's file at the attorney's expense, he is, in essence, purchasing his own stake in the documents he created without added expense to the client.

QFS, however, relies on cases other than *Maleski* to establish its property interest in copies of its files. It thus invokes general principles of property law as well as *Loretto v. Teleprompter,* 458 U.S. 419 (1982), and *Borough of Boyertown Appeal,* 77 Pa. Commw. 357, 466 A.2d 239 (1983). These two cases are factually distinguishable: neither involved property rights to copies of property but rather they both focused on specific, physical property interests. In *Loretto,* for instance, the United States Supreme Court focused on whether a New York law requiring a landlord to permit a cable television company to install cable facilities upon its property constituted a taking requiring just compensation under the Fifth and Fourteenth Amendments. In concluding that this physical operation was a taking, the court observed—as QFS has subsequently emphasized[16]—that "property rights in a physical thing have been described as the rights 'to possess, use and destroy it.'" *Loretto,* 458 U.S. at 435. (citation omitted) In the instant case, however,

---

16. QFS 1/22/2002 memorandum at 6.

Morgan does not challenge QFS's physical possession of its file. Rather, it suggests that QFS has failed to establish exclusive property interests in the copies of those files. Likewise, *Borough of Boyertown Appeal,* which QFS cites for the proposition that "also included in the bundle of rights constituting 'property' is the right to exclude other persons from using the thing in question" [17] deals not with copies of property but with an eminent domain case focusing on rights to a system of water-distribution mains under public streets. *Borough of Boyertown Appeal,* 77 Pa. Commw. at 364-65, 466 A.2d at 241.

Finally, QFS invokes *The Chesapeake and Ohio Railway Co. v. Burkentine,* 45 D.&C.3d 344 (York Cty. 1987), which is likewise factually inapposite. The defendants in *Burkentine* sold microfiche containing the names and confidential information concerning plaintiff's employees. The defendants had never been employed by plaintiff nor was there any evidence as to how they gained access to the microfiche employee lists. *Id.* at 347. In this case, their action would have been wrongful whether they had sold the original employee lists or the copy lists. The facts are clearly distinguishable from the present case involving attorney/client files where rules of professional conduct protect a client from wrongful disclosure. Pa.R.P.C. 1.6.

In light of this dearth of precedent establishing a client's sole property interest in copies of his file and persuasive precedent recognizing an attorney's option to copy client files at his own expense, this court concludes that QFS is not entitled to issuance of a writ of

17. QFS 1/22/2002 memorandum at 6.

seizure for the copies that Morgan has reproduced at its own expense.

The allegations in the plaintiff's complaint, however, of potential misuse of information in its file due to an alleged conflict of interest suggests the possibility of the "exceptional circumstance" set forth in section 46, comment d of the Restatement (Third) of Law Governing Lawyers. As the *Maleski* court emphasized, under "statute, common law, and the Rules of Professional Conduct governing attorneys, Pennsylvania has recognized that confidential communications from a client to an attorney are immune from disclosure." *Maleski,* 163 Pa. Commw. at 40, 641 A.2d at 2 (citing 42 Pa.C.S. §§5916, 5928; Pa.R.P.C. 1.6; *Estate of Kofsky,* 487 Pa. 473, 409 A.2d 1358 (1979)). Admittedly, QFS would be able to assert a claim against Morgan if that law firm improperly disclosed confidential communications by QFS to an adverse party presently represented by Morgan. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 602 A.2d 1277 (1992).

Nonetheless, in light of the particular facts of this case and the uncharted legal waters, it is prudent to provide an additional degree of protection for the client. While ruling that Morgan may retain a copy of the QFS file that has been copied at Morgan's expense, we advise and suggest that the copy shall be stored at Morgan's expense in an independent repository that would provide notice to the former client prior to access by Morgan. This arrangement would afford QFS the option of judicial scrutiny of any future access by Morgan to the copy of its file and, as well, protect Morgan from unfounded claims of misuse of the copied client file.